**Bruce E. HOLLOWAY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 90–2648.

United States Court of Appeals,
Eighth Circuit.

Submitted May 14, 1991.

Decided March 13, 1992.

Rehearing and Rehearing En Banc
Denied April 23, 1992.

John Marshall, Clayton, Mo., argued, for appellant.

Raymond Gruender, St. Louis, Mo., argued, for appellee.

Before JOHN R. GIBSON, BOWMAN, and LOKEN, Circuit Judges.

BOWMAN, Circuit Judge.

Bruce E. Holloway appeals from the final order of the District Court[1] denying his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (1988); his motion for discovery, appointment of counsel, and an evidentiary hearing; and his motion to disqualify the district judge. We affirm.

On July 25, 1985, Holloway was indicted on one count of conspiring to possess cocaine with the intent to distribute and five counts of distributing cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846 (1982). On December 2, 1985, he entered into a plea agreement that provided for the government to dismiss two of the distribution charges and for Holloway to plead guilty to the remaining charges. Prior to accepting Holloway's pleas, Judge Wangelin[2] informed him that he could be sentenced to fifteen years in prison on each of the four counts to which he pled guilty resulting in a total sentence of as much as sixty years. Judge Wangelin did not inform him that, in addition, he could be sentenced on each count to a special parole term.

On January 6, 1986, Judge Wangelin sentenced Holloway to a fine of $7,000 and a prison term of twenty-five years, to be followed by a special parole term of twenty years.[3] Holloway did not appeal. However, he filed a number of post-conviction motions under Fed.R.Crim.P. 35, 18 U.S.C. app. Rule 35 (1982 & Supp. IV 1986), in effect at the time, requesting that his sentence be reduced or modified. All these motions were denied.[4]

Holloway later filed the present motion under 28 U.S.C. § 2255. In that motion he seeks to have his conviction and sentence

---

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

2. The Honorable H. Kenneth Wangelin, now deceased. At the time of his death on June 10, 1987, Judge Wangelin was a Senior United States District Judge for the Eastern District of Missouri.

3. Holloway was sentenced to consecutive ten-year sentences on counts I and II, a consecutive five-year sentence on count III, and a concurrent five-year sentence on count IV. He also was sentenced to two consecutive ten-year terms of special parole on counts II and III, for a total special parole term of twenty years. Holloway argues that his sentence is ambiguous and that actually the total length of his special parole term is only ten years. We reject this argument. *See infra* part II.E.

4. With the exception of his first motion, all of Holloway's Rule 35 motions were decided by Judge Limbaugh. Holloway's first Rule 35 motion was denied by Judge Wangelin.

vacated or corrected. He also seeks permission to take out of time a direct appeal from his conviction and sentence as well as from the District Court's denials of his Rule 35 motions. He claims that he is entitled to this relief because Judge Wangelin: (1) violated Fed.R.Crim.P. 11(c), (e), 18 U.S.C. app. Rule 11(c), (e) (1982 & Supp. III 1985), by accepting Holloway's guilty pleas without informing him of the possibility of receiving a special parole term; (2) violated Fed.R.Crim.P. 32(a)(1), (c)(3)(A), 18 U.S.C. app. Rule 32(a)(1), (c)(3)(A) (Supp. III 1985), by failing to mention Holloway's presentence investigation prior to sentencing him; (3) was biased against Holloway; and (4) did not credit Holloway's sentence to reflect his cooperation with the authorities. In addition, Holloway claims that he was denied effective assistance of counsel, that his sentence constitutes cruel and unusual punishment and a violation of due process, and that his sentence is illegally ambiguous. He also filed a motion for discovery, appointment of counsel, and an evidentiary hearing as well as a motion asking Judge Limbaugh to disqualify himself.

Judge Limbaugh denied the disqualification motion. He referred Holloway's section 2255 motion and the motion for discovery, appointment of counsel, and an evidentiary hearing to a magistrate [5] pursuant to 28 U.S.C. § 636(b)(1)(B) (1988). The magistrate concluded that Holloway's section 2255 motion could be denied on the record and therefore found no reason for discovery, appointment of counsel, or an evidentiary hearing. Accordingly, the magistrate recommended the denial of all of Holloway's motions. Over Holloway's objections, the District Court adopted the magistrate's recommendations [6] and denied Holloway's motions.

Holloway appeals, arguing that Judge Limbaugh erred in denying his section 2255 motion because: (1) Holloway would not have pled guilty if the District Court had complied with Rule 11; (2) the District Court sentenced him without complying with Rule 32; (3) his counsel was ineffective in that he failed to move for Judge Wangelin's disqualification, failed to ensure the enforcement of Rules 11 and 32, and failed to file a direct appeal on these grounds; (4) Judge Wangelin was biased and, as a result, he gave Holloway an illegally ambiguous, excessively harsh sentence with no credit for his cooperation with the government; and (5) the twenty-year special parole term written into his judgment conflicts with Judge Wangelin's oral pronouncement of an aggregate ten-year special parole term. He also argues that Judge Limbaugh erred in refusing to disqualify himself and in denying the motion for an evidentiary hearing, discovery, and appointment of counsel.[7]

## I.

We first consider Judge Limbaugh's denial of Holloway's disqualification motion. Holloway filed an affidavit in support of this motion in which he alleges that Judge Limbaugh's impartiality reasonably might be questioned because: (1) Judge Limbaugh denied Holloway's motion for a reduction in sentence but granted a similar motion by one of Holloway's more culpable co-defendants; and (2) Judge Limbaugh was a personal friend of Judge Wangelin who, Holloway alleges, harbored a bias against him. Judge Limbaugh denied this motion without comment.

■ Judges have an affirmative duty: to probe the legal sufficiency of [a] petitioner's affidavit of prejudice and not to disqualify themselves unnecessarily. Affidavits based on conclusions, opinions, and rumors are an insufficient basis for recusal. For recusal to be necessary, the bias must be personal and extra-judicial.

---

5. The Honorable Carol E. Jackson, United States Magistrate Judge for the Eastern District of Missouri.

6. We refer to the conclusions in the Report and Recommendation as those of the District Court. *See* Fed.R.Civ.P. 52(a).

7. Holloway has been assisted in this appeal by counsel appointed for that purpose by this Court.

*Davis v. Commissioner,* 734 F.2d 1302, 1303 (8th Cir.1984) (per curiam) (citations omitted). In addition, disqualification is necessary only if the facts contained in the affidavit "would provide an objective, knowledgeable member of the public with a reasonable basis for doubting [the] judge's impartiality." *Perkins v. Spivey,* 911 F.2d 22, 33 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1309, 113 L.Ed.2d 243 (1991).[8] We are satisfied that Holloway's allegations would not give a reasonable person factual grounds upon which to doubt Judge Limbaugh's impartiality. His first allegation complains of nothing more than an unfavorable judicial ruling which is insufficient to require disqualification absent a showing of "pervasive personal bias and prejudice," *Davis,* 734 F.2d at 1303, a showing Holloway does not make. His second allegation also must fail. That Judge Limbaugh and the late Judge Wangelin may have been friends is not a compelling reason for Judge Limbaugh to disqualify himself in this case. And in any event, we find insufficient Holloway's allegations that Judge Wangelin was biased against him. *See infra* part II.C. For these reasons, we sustain Judge Limbaugh's refusal to disqualify himself.

## II.

█ Next we consider the denial of Holloway's section 2255 motion. "We apply the same standards of review in a § 2255 proceeding as in a habeas corpus proceeding," *Cassidy v. United States,* 428 F.2d

585, 588 n. 1 (8th Cir.1970), and in such proceedings we review de novo district court conclusions regarding issues of law, *see, e.g., Couch v. Trickey,* 892 F.2d 1338, 1341 (8th Cir.1989), as well as issues involving mixed questions of law and fact. *See, e.g., Ford v. Lockhart,* 904 F.2d 458, 460 (8th Cir.1990). As Holloway's section 2255 claims were denied without an evidentiary hearing, to affirm the District Court we must be persuaded by our de novo review that "the motion and the files and records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. § 2255.

### A.

Holloway's claims that Judge Wangelin violated Rule 32, that the sentence imposed by Judge Wangelin constitutes cruel and unusual punishment and a denial of due process, and that Holloway's sentence was not properly credited for his cooperation with the authorities are meritless and require little discussion. Holloway concedes all three of the bases upon which the District Court denied his Rule 32 claim—that he and his counsel did review and comment on his presentence report, that he did not raise this Rule 32 claim in any of his Rule 35 motions, and that he was not sentenced on the basis of any incorrect information. *See* Appellant's Pro Se Br. at 6–7; Appellant's Pro Se Reply Br. at 1–2; Appellant's Supplemental Br. at 29. He offers no additional reasons based upon Rule 32 for section 2255 relief.[9] Thus, we find no error in the denial of this claim.

**8.** The standard for reviewing on direct appeal a trial court's denial of a disqualification motion is unclear in this circuit. We usually have reviewed for abuse of discretion. *See, e.g., Perkins v. Spivey,* 911 F.2d 22, 33 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1309, 113 L.Ed.2d 243 (1991); *Gray v. University of Ark.,* 883 F.2d 1394, 1398 (8th Cir.1989); *Larson v. United States,* 835 F.2d 169, 172 (8th Cir.1987), *cert. denied,* 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988); *Gilbert v. City of Little Rock, Ark.,* 722 F.2d 1390, 1399 (8th Cir.1983), *cert. denied,* 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 820 (1984); *In re Federal Skywalk Cases,* 680 F.2d 1175, 1183 (8th Cir.), *cert. denied,* 459 U.S. 988, 103 S.Ct. 342, 74 L.Ed.2d 383 (1982); *United States v. Trevithick,* 526 F.2d 838, 839 (8th Cir.1975), *cert. denied,* 424 U.S. 972, 96 S.Ct. 1475, 47 L.Ed.2d 742 (1976). In some

cases, however, we have conducted de novo review. *See, e.g., Souder v. Owens–Corning Fiberglas Corp.,* 939 F.2d 647, 653 (8th Cir.1991); *United States v. Dodge,* 538 F.2d 770, 781 (8th Cir.1976), *cert. denied,* 429 U.S. 1099, 97 S.Ct. 1119, 51 L.Ed.2d 547 (1977). Here, we reach the same result under either standard and therefore need not attempt to resolve this apparent inconsistency in our decisions.

**9.** A violation of Rule 32 is sufficient to support a claim under section 2255 only if the violation constitutes "'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" *Poor Thunder v. United States,* 810 F.2d 817, 822 (8th Cir.1987) (quoting *Hill v. United States,* 368 U.S.

To successfully challenge his sentence (which is a pre-guidelines sentence) as excessive, as disproportionate relative to the sentences of his co-defendants, or as failing to reflect adequately his cooperation with the authorities, Holloway must " 'present a clear and convincing case of abuse of discretion ... or a patent violation of a constitutional guarantee.' " *United States v. Garcia,* 785 F.2d 214, 228 (8th Cir.) (quoting *Orner v. United States,* 578 F.2d 1276, 1280 (8th Cir.1978)), *cert. denied,* 475 U.S. 1143, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986); *see also United States v. Cox,* 921 F.2d 772, 775 (8th Cir.1990). Holloway does not assert that his sentence exceeds that authorized by law, and his bald assertions that his sentence is too harsh, that it does not reflect his cooperation with the authorities, and that more culpable co-defendants received shorter sentences are insufficient to show either an abuse of discretion or a violation of a constitutional guarantee.

### B.

Holloway argues that he is entitled to relief under section 2255 because the District Court violated Rule 11 by accepting his guilty plea without informing him that his sentence could include a special parole term. He argues that if he had known about the possibility of a special parole term, he would not have pled guilty, and he concludes, therefore, that his conviction and sentence should be vacated and he should be permitted to plead anew. The District Court rejected this contention, holding that, although it was error for the court to fail to inform him of the possibility of a special parole term, the error was harmless as Holloway knew he could receive a sixty-year sentence as a result of his plea and, even including the special parole term, his total sentence is only forty-five years. We agree with the District Court's conclusion.

In *United States v. Timmreck,* 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979), the Supreme Court addressed the question of whether a formal violation of Rule 11 was a sufficient basis upon which to mount a collateral attack upon a guilty plea. *Id.* at 781, 99 S.Ct. at 2086. There, Timmreck had been charged with a number of drug violations but, pursuant to a plea agreement, pled guilty to only one charge. Prior to accepting Timmreck's plea, the district court properly informed him that he could be sentenced to fifteen years in prison. However, it failed to inform him that, in addition, he also would receive a special parole term of at least three years. Timmreck's actual sentence was ten years in prison and five years of special parole. He did not object to the sentence nor did he appeal. Two years later he filed a section 2255 motion challenging his sentence on the ground that the district court had violated Rule 11 by failing to inform him that he would receive a special parole term.

The Supreme Court found Timmreck's situation substantially similar to the situation in *Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), in which a prisoner had sought section 2255 relief because the sentencing court had failed to inform him that he could speak on his own behalf at his sentencing hearing. The *Timmreck* Court quoted that portion of *Hill* in which it reasoned that:

> The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional.... It does not present "exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent."

*Timmreck,* 441 U.S. at 783, 99 S.Ct. at 2087 (quoting *Hill,* 368 U.S. at 428, 82 S.Ct. at 471 (quoting *Bowen v. Johnston,* 306 U.S. 19, 27, 59 S.Ct. 442, 446, 83 L.Ed. 455 (1939))). Moreover, the Court held that "[t]he reasoning in *Hill* is equally applicable to a formal violation of Rule 11." *Id.* Applying the rationale of *Hill,* the Court found that formal violations of Rule 11 are

424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417    (1962)).

"neither constitutional nor jurisdictional," *id.*, and it concluded that:

> [no] claim reasonably [can] be made that the error here resulted in a "complete miscarriage of justice" or in a proceeding "inconsistent with the rudimentary demands of fair procedure." Respondent does not argue that he was actually unaware of the special parole term or that, if he had been properly advised by the trial judge, he would not have pleaded guilty.

*Id.* 441 U.S. at 784, 99 S.Ct. at 2087 (citations omitted in original). Holloway seizes upon the latter portion of this reasoning, attempting to distinguish his case from Timmreck's by arguing that he did not know about special parole terms and that, if he had, he would not have pled guilty. He reasons that, simply by making these two allegations, the Rule 11 violation upon which he bases his claim cannot be merely a "formal violation." He concludes, then, that he is entitled to relief on this claim. We disagree.

*Timmreck* establishes that a violation of Rule 11 is merely technical, and therefore insufficient to justify section 2255 relief, if the violation "does not present 'exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent.'" *Id.* at 783, 99 S.Ct. at 2087 (quoting *Hill*, 368 U.S. at 428, 82 S.Ct. at 471 (quoting *Johnston*, 306 U.S. at 27, 59 S.Ct. at 446)). Under *Timmreck*, a Rule 11 violation does not present such exceptional circumstances unless it "results in a complete miscarriage of justice," or is "inconsistent with the rudimentary demands of fair procedure." *Id.* at 783, 99 S.Ct. at 2087 (quoting *Hill*, 368 U.S. at 428, 82 S.Ct. at 471). The fact that Timmreck "[did] not argue that he was actually unaware of the special parole term or that, if he had been properly advised by the trial judge, he would not have pleaded guilty," *Id.* at 784, 99 S.Ct. at 2087, was enough to convince the *Timmreck* Court that the error before it was not of the character or magnitude cognizable under a writ of habeas corpus. However, it does not follow that every Rule 11 violation will support a section 2255 claim if the defendant alleges that he had no actual knowledge of the omitted matter and that he would not have pled guilty if he had possessed such knowledge.[10]

*Timmreck* governs our analysis of this issue. Here, Holloway was informed that he could receive a sixty-year prison sentence and his total sentence of forty-five years falls well short of the maximum sentence he could have received. The violation of Rule 11 of which he complains did not result in a complete miscarriage of justice and is not inconsistent with the rudimentary demands of fair procedure. Therefore, under *Timmreck*, the district court's failure to comply with Rule 11 does not support Holloway's claim for section 2255 relief from his guilty pleas or his sentence.

Our decision in *Hill v. Lockhart*, 894 F.2d 1009, 1010 (8th Cir.) (en banc) (adopting 877 F.2d 698 (8th Cir.), *vacated & reh'g granted sub nom. United States v. Unit No. 7 & Unit No. 8*, 883 F.2d 53 (8th Cir.1989)), *cert. denied*, —— U.S. ——, 110 S.Ct. 3258, 111 L.Ed.2d 767 (1990),[11] does not mandate a different result. In *Hill* we

---

**10.** We note also that, like Holloway, Timmreck's actual sentence, including his term of special parole, did not exceed the maximum term of imprisonment that he knew he could receive by pleading guilty. *See United States v. Timmreck*, 441 U.S. 780, 782, 99 S.Ct. 2085, 2086, 60 L.Ed.2d 634 (1979).

**11.** In our en banc decision in *Hill* we reached the same conclusion as the panel that originally heard the appeal. *See Hill v. Lockhart*, 877 F.2d 698 (8th Cir.), *vacated & reh'g granted sub nom. United States v. Unit No. 7 & Unit No. 8*, 883 F.2d 53 (8th Cir.1989). We also adopted its reasoning. *Hill v. Lockhart*, 894 F.2d 1009, 1010 (8th Cir.) (en banc) ("We now affirm, adopting the reasoning contained in the panel decision."), *cert. denied*, —— U.S. ——, 110 S.Ct. 3258, 111 L.Ed.2d 767 (1990). Thus, references to the reasoning in our panel decision in *Hill* are both helpful and appropriate. However, full citations to the panel decision are cumbersome as that decision was vacated, *see United States v. Unit No. 7 & Unit No. 8*, 883 F.2d at 53, 53–54 (8th Cir.1989), rehearing was granted, *see id.*, and its reasoning later was adopted by the en banc court. *See Hill*, 894 F.2d at 1010. In the interests of simplicity and clarity, we refer to our panel decision as *Hill I* and our en banc decision as *Hill II*.

granted the petitioner relief under 28 U.S.C. § 2254 because his court-appointed counsel incorrectly advised him that, by pleading guilty, he would be eligible for parole in six years. *Hill II*, 894 F.2d at 1010. [12] In fact, under his plea agreement and the governing Arkansas law, Hill was not eligible for parole for almost nine years. *Hill I*, 877 F.2d at 700. Moreover, the record supported Hill's claim that he had told his attorney that he would plead guilty only if he would be eligible for parole within seven years. *Id.* at 699–700. As Hill's counsel had only to consult Arkansas law to calculate correctly Hill's parole eligibility date, *id.* at 703, and because the record supported Hill's claim that his counsel knew that Hill's decision to plead guilty would be based upon his parole eligibility, *id.*, we held that Hill's guilty plea was invalid as it was the product of ineffective assistance of counsel. *Hill II*, 894 F.2d at 1010.

Hill was able to show that his guilty plea was tainted by the erroneous plea information. Here, however, the situation is markedly different. When Holloway pled guilty he knew he could receive a sentence of as much as sixty years in prison, and in fact he received a prison term of twenty-five years, to be followed by a special parole term of twenty years. Special parole is far less onerous than prison and here, even including the special parole term, Holloway's total sentence of forty-five years is well within the outer limit of the sentence he knew he could be given. Moreover, the record is barren of any support for Holloway's assertion that he would not have pled guilty if he had known he could be sentenced to a special parole term. We find nothing in *Hill* requiring that we grant Holloway relief on his Rule 11 claim. *Cf. United States v. Bachynsky*, 934 F.2d 1349, 1359–60 (5th Cir.) (en banc) (failure to advise defendant of a potential term of supervised release is harmless error unless defendant can show actual prejudice), *cert.*

*denied,* — U.S. ——, 112 S.Ct. 402, 116 L.Ed.2d 351 (1991).

In addition, we are mindful that Rule 11 itself provides that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." Fed.R.Crim.P. 11(h). As Holloway's substantial rights were not affected by the Rule 11 violation that occurred here, the error was harmless. We therefore agree with the District Court that Holloway's Rule 11 claim affords him no basis for habeas relief.

### C.

#### (i)

Holloway contends that his conviction should be dismissed because Judge Wangelin, the sentencing judge, was biased against him and failed to disqualify himself. The District Court rejected these arguments, noting initially that Holloway does not allege that Judge Wangelin's alleged bias affected the validity of his guilty pleas. *See* Appellant's App. at 35 n. 4 (Mag. Report and Recommendation). The court therefore found this claim insufficient to challenge his guilty pleas. Holloway does not dispute this conclusion, nor could he do so successfully. *See, e.g., Kress v. United States*, 411 F.2d 16, 20–21 (8th Cir.1969) (per curiam).

Regarding Holloway's sentence, the District Court held that Holloway's claim that Judge Wangelin was biased does not entitle him to relief. The court determined that Holloway had failed to utilize the procedures available to him under 28 U.S.C. §§ 144, 455 (1982) to request that Judge Wangelin disqualify himself, and even if he had filed a timely affidavit under those sections, his allegations of bias did not require the disqualification of Judge Wangelin. We agree on both points.

#### (ii)

"The statutory requirements [of sections 144 and 455] must be complied with before

---

**12.** Hill's counsel erroneously believed that Hill only had to serve one third of his sentence, less credit for good time, to be eligible for parole. In fact, as Hill had a prior conviction, he had to serve one half of his sentence, less credit for good time, to be eligible. *Hill I*, 877 F.2d at 699–700.

a judge can be disqualified. Relief under section 144 is expressly conditioned on the timely filing of a legally sufficient affidavit." *United States v. Faul,* 748 F.2d 1204, 1210 (8th Cir.1984) (citation omitted), *cert. denied,* 472 U.S. 1027, 105 S.Ct. 3500, 3501, 87 L.Ed.2d 632 (1985). In addition, although section 455 has no express timeliness requirement, this Court has held that claims under this section will not be considered unless timely made. *See, e.g., Oglala Sioux Tribe v. Homestake Mining Co.,* 722 F.2d 1407, 1414 (8th Cir.1983); *see also Polizzi v. United States,* 926 F.2d 1311, 1321 (2nd Cir.1991).

■ Holloway does not contend that he ever raised any issue as to Judge Wangelin's alleged bias in a timely way. Instead, he contends that he has a good excuse for not acting in timely fashion. He relies on the rule that "[d]elay in filing a motion for disqualification may be excused if good cause is shown for why the motion was not timely filed." *United States v. Branco,* 798 F.2d 1302, 1304 (9th Cir.1986). The burden is on the affiant to show good cause for failing to file a timely motion. *See Roussel v. Tidelands Capital Corp.,* 438 F.Supp. 684, 691 (N.D.Ala.1977); *cf. Kress,* 411 F.2d at 20 (burden of proof is on petitioner in section 2255 proceeding). Holloway claims that the reason he did not make his disqualification argument earlier was that he was not afforded effective assistance of counsel. We review this claim under the standards set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ Under *Strickland,* to establish ineffective assistance of counsel, a party must show that "counsel's performance was deficient," and that this "deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. at 2064. Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential" and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. Here, Holloway's counsel was aware prior to Holloway's sentencing of most of the allegations that now under-

lie Holloway's claim of bias, and he made a trip to Cape Girardeau for the sole purpose of discussing them with Judge Wangelin. He apparently was satisfied, based on his meeting with Judge Wangelin, that the judge harbored no disqualifying bias toward Holloway and that a disqualification motion would not be appropriate. Holloway has failed to overcome the presumption that his counsel's conduct was reasonable.

Moreover, assuming *arguendo* that Holloway's counsel's performance was deficient under *Strickland,* Holloway has failed to show that this deficient performance resulted in *Strickland* prejudice. The District Court found that none of the allegations underlying Holloway's claim of bias required Judge Wangelin's disqualification, and under the standards set out in part I of this opinion we agree. *See supra* part I. The only one of Holloway's allegations requiring a full discussion is the allegation that the judge wrote a derogatory poem about Holloway. The text of the poem is set forth as an appendix to this opinion. Even if the judge were the author of the poem, we are not convinced the poem establishes a "reasonable basis for doubting [his] impartiality." *Perkins,* 911 F.2d at 33. We therefore cannot conclude that counsel's failure to raise this allegation as a reason for the disqualification of Judge Wangelin amounted to *Strickland* prejudice. Moreover, this claim founders on the issue of authorship. The poem is unsigned, and Holloway's claim that Judge Wangelin wrote it centers upon the affidavit of Jane T. Davis, a friend of Holloway's. The affidavit states that:

> [t]his poem was brought to me by a personal friend of the judges [sic], Mrs. Frank Wylie, who had known the judge for many years and was familiar with his poetry. She voiced serious concerns about the judge's feelings about [Holloway] and the Holloway family.

Appellant's App. at 90 (Davis's Aff.). Although Ms. Davis's affidavit implies that Mrs. Wylie thought the judge had written the poem, the affidavit does not say that, nor does it say that either Ms. Davis or

Mrs. Wylie had any actual knowledge of the poem's authorship. To the extent that this affidavit implies that Judge Wangelin wrote the poem, that implication is based not on any of the facts asserted in the affidavit, but solely upon inference and conjecture, and such an affidavit does not require judicial disqualification. *See Davis*, 734 F.2d at 1303.[13]

### D.

■ Holloway argues that his convictions and sentence should be vacated and he should be permitted to plead anew, or he should be permitted to file an out-of-time appeal from his conviction and sentence or from the denial of his Rule 35 motions, on the ground that his counsel was constitutionally ineffective. He bases this argument on his counsel's failure to: (1) ensure that the District Court complied with Rules 11 and 32; (2) seek the disqualification of Judge Wangelin; and (3) file a direct appeal raising the violations of Rules 11 and 32, the excessiveness of his sentence, and the failure of Judge Wangelin to disqualify himself.[14] The District Court rejected this claim, along with Holloway's other claims, without an evidentiary hearing.

To establish ineffective assistance of counsel, "the defendant must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. As the District Court already had found that Holloway could not show prejudice from the violations of Rules 11 and 32, the failure to seek the disqualification of Judge Wangelin, or the alleged excessiveness of the sentence, it held that his counsel's failure to pursue these matters did not constitute ineffective assistance of counsel. We agree. *See supra* parts II.A–C. The District Court also concluded that, because the alleged errors that

Holloway says his counsel should have raised in a direct appeal were all non-meritorious, the failure of Holloway's counsel to raise them in a direct appeal was not prejudicial and thus did not constitute ineffective assistance of counsel. Although we agree with the District Court's conclusion, we believe that it ended its analysis prematurely.

In *Hollis v. United States*, 687 F.2d 257 (8th Cir.1982), *cert. denied*, 459 U.S. 1221, 103 S.Ct. 1228, 75 L.Ed.2d 462 (1983), we faced a virtually identical situation. There Hollis had pled guilty to five counts of interstate transportation of forged securities and was sentenced to twenty-five years in prison. *Id.* at 258. Although he had instructed his counsel to appeal his sentence, *id.* at 259, his counsel did not file a notice of appeal until twenty days after sentencing. We therefore dismissed the appeal as untimely. *Id.* at 258. Hollis proceeded to file a motion under section 2255, alleging: "(1) that he was denied effective assistance of counsel due to his attorney's failure to file a timely appeal; (2) that he was denied effective assistance of counsel due to his attorney's failure to order an independent psychiatric examination; and (3) that his guilty plea was involuntary." *Id.* at 258. The district court found the last two claims to be meritless, and, because Hollis specified no other claims that he would have raised on appeal, the court concluded that he had not been prejudiced by his counsel's failure to file a timely appeal. It therefore rejected his claim that his counsel had been ineffective because he failed to file a timely notice of appeal. *Id.*

We reversed, reasoning that, "[i]n situations where ineffective assistance of counsel deprives a defendant of his right to appeal, courts have not required a showing

---

**13.** Holloway also asserts that, by comparing the derogatory poem to a poem Judge Wangelin included in one of his decisions, we can deduce that Judge Wangelin authored the poem in question. This contention invites the court to exercise a literary detective license it does not possess, to speculate, and, equally beyond our proper function, to find facts. And as indicated in the text of this opinion, we believe that, even if authored by Judge Wangelin, the poem on its

face is insufficient to establish bias as a matter of law. For these reasons, we decline to parse the poem in search of authorship.

**14.** Holloway does not appeal from the denial of his claim that his counsel was ineffective in failing to include certain issues in his Rule 35 motions.

of prejudice or of likely success on appeal." *Id.* at 259 (quoting *Robinson v. Wyrick*, 635 F.2d 757, 758 (8th Cir.1981)). We therefore held that "Hollis need not show that he was prejudiced by his attorney's failure to file a timely notice of appeal." *Id.* at 259. We accordingly vacated Hollis's sentence and remanded for resentencing, with "the time for appeal then commencing to run from the date of the resentence." *Id.; see also Estes v. United States*, 883 F.2d 645, 648 (8th Cir.1989) ("This Court has held that counsel's failure to file a notice of appeal when so instructed by the client constitutes ineffective assistance of counsel for purposes of section 2255."); *Williams v. Lockhart*, 849 F.2d 1134, 1137 n. 3 (8th Cir.1988) ("[D]eficient attorney performance in perfecting an appeal is prejudicial under the *Strickland v. Washington*, standard for determining ineffective assistance of counsel." (citation omitted)).

Thus, if in fact Holloway instructed his counsel to file an appeal, this case would be controlled by *Hollis*, and we would be compelled to hold that the failure of Holloway's counsel to file a notice of appeal constitutes ineffective assistance of counsel despite Holloway's failure to show actual prejudice.[15] Likewise, if the motion, files, and records of the case were inconclusive regarding whether Holloway instructed his counsel to file an appeal, we would be compelled to "remand this claim to the District Court for a hearing on the issue of whether [Holloway] requested his counsel to file an appeal." *Estes*, 883 F.2d at 649. However, the motion, files, and records of this case show conclusively that Holloway did not instruct his counsel to file an appeal.

In his section 2255 motion and his supporting memorandum, both of which he attested were true and correct and which he signed under penalty of perjury, Holloway states that he "asked," Appellant's App. at 15 (Holloway's Section 2255 Motion), and "inquir[ed]," *id.* at 22 (Holloway's Memorandum in Support of his Section 2255 Motion), about a direct appeal.

Further, in his traverse to the government's response to his motion, he states that his counsel "failed to advise him of his right to a direct appeal," *id.* at 76 (Holloway's Traverse), and later he states:

> Regarding counsel's failure to advise petitioner of his right to a direct appeal the affiant again admits to the petitioner's allegation when he states "please note that we may very well have never discussed with Bruce his right to direct appeal following the sentencing[.]" ([P]aragraph 1 of Hadican affidavit). This failure occurred in the context of several Rule 11 and Rule 32 violations of an obvious and prejudicial nature. Petitioner concurs that there was no discussion about a direct appeal, just the flat statement to petitioner when he asked what remedies he had available after sentencing that the next step was a Rule 35 motion. The query by petitioner and answer by counsel were repeated again within a few days.

Id. at 84–85. On the same page, Holloway states that:

> While discussion did occur in the days just after sentencing[,] a direct appeal was not discussed even though petitioner and Ms. Davis *specifically asked* counsel about appealing the sentence. The strategy of pursuing a Rule 35 motion and, later, a 2255 motion was discussed, but the timely alternative, a direct appeal was not.

*Id.* (emphasis added). He also argues that the circumstances of his case "should have imposed [a] duty upon counsel to advise petitioner of his right to appeal." *Id.* at 87.

It is of interest that the affidavit of Jane T. Davis, attached to the same traverse, contains the following statement:

> Several days later I spoke with Mr. Hadican again and asked about appealing the sentence. He said that the only appeal was through the Rule 35 as Bruce had pled guilty. I persisted in asking if

---

**15.** The presumption of prejudice employed in *Hollis* is applicable only when counsel failed to file a notice of appeal after being "so instructed by the client." *Estes v. United States*, 883 F.2d 645, 648 (8th Cir.1989).

there couldn't be any other means of direct appeal. Mr. Hadican's only advice was to wait until the judge died and then to get another judge on the case.

*Id.* at 90 (Davis's Aff.).

In only one instance does Holloway state that he "told [his] attorney, J. Martin Hadican, that [he] wanted to appeal [his] case." Appellant's App. at 61 (Holloway's Aff.). This is inconsistent with all of Holloway's numerous other statements as well as the statements of Ms. Davis and his trial attorney. Absolutely nothing in the record agrees with, supports, or corroborates this statement in any manner. We therefore conclude that the fact that Holloway has managed to make a single, self-serving, self-contradicting statement is insufficient to render the motion, files, and records of this case inconclusive on the question of whether Holloway instructed his counsel to appeal. *Cf. Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir.1983) (affirming summary judgment despite contradictory statements in non-movant's deposition and affidavit as no legitimate reason was given for non-movant to file contradictory affidavit). Accordingly, we affirm the District Court's denial of this claim without an evidentiary hearing.

### E.

Holloway also claims that his sentence is ambiguous with respect to his special parole term because Judge Wangelin first ordered him to serve two consecutive ten-year special parole terms, which, the judge stated at a later point in the sentencing proceedings, resulted in a total special parole term of ten years. Holloway argues that this conflict in his sentence pronouncement should be resolved in his favor resulting in a special parole term of ten rather than twenty years. The District Court rejected Holloway's argument, finding that "the transcript of the sentencing hearing and the judgment and commitment order reflect that a twenty-year special parole term was intended and imposed." Appel-

lant's App. at 38 (Mag.Report and Recommendation). We agree.

There is no dispute that ambiguities in the sentence pronouncement are to be construed in favor of the defendant, *see United States v. Raftis*, 427 F.2d 1145, 1146 (8th Cir.1970) (per curiam), but here the issue is whether Holloway's sentence actually is ambiguous. Because the District Court based its conclusion that the sentence is not ambiguous exclusively upon the sentencing transcript and the judgment and commitment order, we consider the question de novo. *Johnson v. Mabry*, 602 F.2d 167, 170–71 (8th Cir.1979).

Holloway's sentence pronouncement provides:

Bruce Holloway, on your conviction as a result of the plea of guilty to Count I, it is adjudged that you be committed to the custody of the Attorney General of the United States for a period of ten years, and that you be fined the sum of $7,000.00.

On Count II, Mr. Holloway, it is adjudged that you be sentenced to the custody of the Attorney General of the United States for a period of ten years, to be followed by a *ten year special parole term*, and that said sentence run consecutively to the sentence imposed on Count I.

Bruce Holloway, on Count III, it is adjudged that you be committed to the custody of the Attorney General of the United States for a period of five years, to be followed by a *ten year special parole term*, said sentence to run *consecutive* to the sentence imposed under Count II and Count I.

Bruce E. Holloway, on your conviction as a result of your plea of guilty to Count IV, you are turned over to the custody of the Attorney General of the United States for a period of five years, to be followed by a special parole term of ten years, said sentence to run concurrent to the sentence imposed under Count III, so that your aggregate sentence will be

twenty-five years imprisonment, a $7,000.00 fine, and [a] *special parole term of ten years.*

Appellant's App. at 54–55 (Sentencing Tr.) (emphasis added). The sentence pronouncement must be read carefully to discern the sentencing judge's intent. Having done so, we do not find it ambiguous. The pronouncement clearly states that Holloway's sentences on counts I, II, and III are to run consecutively. The last paragraph of the pronouncement also states that Holloway's total prison sentence is twenty-five years, a figure that can be arrived at only if the sentences on counts I, II, and III are consecutive. We find no ambiguity here. The sentence pronouncement itself is sufficiently clear with regard to the intent of the sentencing judge. Moreover, the intent easily discerned from a careful reading of the pronouncement is consistent with the judgment and order of commitment entered by the sentencing judge. The closing reference in the pronouncement to a special parole term of ten years is transparently inadvertent, and does not render the pronouncement ambiguous.

### III.

Finally, we consider the denial of Holloway's motion for discovery and appointment of counsel.[16] The District Court denied these requests on the basis that Holloway's claims could be denied upon the record. *See* Appellant's App. at 38 (Mag.Report and Recommendation). Because we agree that the District Court properly denied Holloway's claims upon the record, we find no abuse of discretion in the denial of Holloway's motion for discovery and appointment of counsel.

### IV.

For the reasons set forth above, the order of the District Court is affirmed.

---

**16.** We review for abuse of discretion the denial of a discovery motion as well as a motion for the appointment of counsel. *See, e.g., Battle v. Armontrout,* 902 F.2d 701, 702 (8th Cir.1990) (appointment of counsel); *Smith v. United States,* 618 F.2d 507, 509 (8th Cir.1980) (per curiam) (discovery motion).

## APPENDIX

[This is the text of the poem discussed in part II.C.(ii) of this opinion.]

There were many folks in Poplar Bluff
Including one taxpayer
Who wondered what was going on
When Brucie was the mayor.

Now first he fired Michie
With very little grace,
So he could get a manager
To take Joe Michie's place.

Our nation is accessible,
No place is out of reach.
But Brucie single-mindedly
Went to Fort Walton Beach.

He picked up Brother Bechtel,
Who was known as quite a wheel.
The council knuckled under
And then they bought the deal.

Then Brucie quit as mayor
And took his council seat
And Bechtel fired Clifford Hodge,
Put Murray on the street.

Then Feds got in the action
And played a little joke.
The result was catastrophic
Grabbed Brucie with the coke.

Now somewhere children laugh and play
And somewhere people shout.
But there is no joy in City Hall,
'Cause Brucie done struck out.

Appellant's App. at 102.