**UNITED STATES of America, Appellant,**

v.

**Jim Guy TUCKER; William J. Marks, Sr.; John H. Haley, Appellees.**

**United States Department of Justice; Sun Diamond Growers of California, Amicus Curiae.**

**No. 95–3268EA.**

United States Court of Appeals, Eighth Circuit.

May 6, 1996.

RICHARD S. ARNOLD, C.J., and MORRIS SHEPPARD ARNOLD, J., took no part in the consideration or decision of this case.

MCMILLIAN, Circuit Judge, dissenting, with whom MURPHY, Circuit Judge, joins.

Neither law nor fact supports the panel's decision to disqualify Judge Henry Woods from presiding at the trial of *United States v. Jim Guy Tucker*. Judge Woods is one of this circuit's most experienced and respected trial judges. He has served his community, his state, and his nation with distinction for more than fifty-six years. For a panel of this court to disqualify Judge Woods "to preserve the appearance of impartiality" is a disservice to the federal judiciary. To do so on the basis of newspaper and magazine articles and without the issue having been raised in district court, giving Judge Woods an opportunity to respond, compounds the indignity.

Because we believe that this decision not only demeans the reputation of an honorable member of the federal judiciary, but incorrectly applies the clearly established procedural, evidentiary, and substantive standards required by 28 U.S.C. § 455(a), we believe that this court should rehear this case en banc and reverse the panel's decision. Therefore, we dissent from its decision to deny the suggestion for the petition for rehearing en banc.[1]

The panel concedes that there are no past or present political or social relationships between Judge Woods and defendant Tucker. Yet, based on the allegations printed in various newspaper articles, the panel concludes that the reported friendship between Judge Woods and the Clintons in conjunction with the Clintons' occasional political association with defendant Tucker creates an "unmistakable appearance" of bias or partiality. As a consequence of this conclusion, the panel disqualifies Judge Woods and remands the case for reassignment. This standard lacks any precedential or statutory foundation and establishes an unworkable guideline defining what constitutes the appearance of partiality.

Although this court has on occasion invoked its power to reassign a case, it has done so sparingly and only where our court was presented with unusual circumstances. *See, e.g., Reserve Mining Co. v. Lord,* 529 F.2d 181 (8th Cir.1976). By contrast, the panel's exercise of its supervisory power in response to the Independent Counsel's request, which failed to present a basis for procedural exemption, deviates from our court's precedent both with respect to the disqualification standard as well as the process by which disqualification requests must be made. More importantly, the panel's venture into unchartered waters establishes a dangerous precedent that is not only difficult to reconcile with this court's past decisions, but will return to haunt us in the future. In particular, we object to the unusual procedural departure employed by the panel to reach the merits of a request not first brought before the district court in a timely fashion. We also protest the evidentiary foundation on which the panel concludes that an "unmistakable appearance" of partiality exists and the unusual process by which that evidence was introduced. Finally, we reject the standard applied to Judge Woods—i.e., a friend of a friend creates an impermissible appearance of bias—as without precedential support and unworkable. Because of the importance of the issues, we address the grounds for each of our objections below.

## A. The Procedural Requirements for Section 455

This court has repeatedly held that section

---

1. Although this dissent focuses upon Judge Woods' disqualification, the panel opinion, in holding that the judiciary lacks jurisdiction to review the scope of the authority of the special prosecutor, commits fundamental error. It fails to separate the unauthorized review of the special prosecutor's exercise of discretion from the scope of the special prosecutor's statutory authority. *See Morrison v. Olson,* 487 U.S. 654, 684, 108 S.Ct. 2597, 2615, 101 L.Ed.2d 569 (1988) ("We emphasize, nevertheless, that the Special Division has *no* authority to take any action or undertake any duties that are not specifically authorized by the Act."); *cf. United States v. Juvenile Male,* 923 F.2d 614, 618 (8th Cir.1991) ("While this court may not have the power to guide a federal prosecutor's discretion, we must ensure that the exercise of that discretion is within the confines of section 5032.").

455[2] recusal motions must be raised first with the district court; the appellate court then reviews the district court's determination for an abuse of discretion. *See, e.g., Pope v. Federal Express Corp.*, 974 F.2d 982, 985 (8th Cir.1992); *In re Hale*, 980 F.2d 1176, 1178 (8th Cir.1992); *accord United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 183 (2d Cir.1991). Judge Bowman, the author of the panel opinion, has previously made this point:

> Relief under section 144 is expressly conditioned on the timely filing of a legally sufficient affidavit.... In addition, although section 455 has no express timeliness requirement, this Court has held that claims under this section will not be considered unless timely made.

*Holloway v. United States*, 960 F.2d 1348, 1355 (8th Cir.1992).

Parties are required to apply for recusal "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim," *Apple v. Jewish Hosp. & Medical Ctr.*, 829 F.2d 326, 333 (2d Cir.1987), for two reasons: 1) a prompt application affords the district judge an opportunity to assess its merits, and 2) a prompt application avoids the risk that a party is holding back a recusal motion as a fall-back position in the face of an adverse ruling. *See In re International Business Machines Corp.*, 45 F.3d 641, 643 (2d Cir.1995); *accord In re Cargill, Inc.*, 66 F.3d 1256, 1262–63 (1st Cir.1995) ("In the real world, recusal motions are sometimes driven more by litigation strategies than by ethical concerns."); *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1472 (11th Cir.1986) ("Counsel, knowing the facts claimed to support a § 455(a) recusal for appearance of partiality may not lie in wait, raising the recusal issue only after learning the court's ruling on the merits."), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987).

The Independent Counsel's tardy request confronts this court with just such considerations. The Independent Counsel was undoubtedly aware of the connections he cited as the basis for his request prior to the hearing before Judge Woods.[3] Yet, he did not bring the matter to the attention of Judge Woods, or to any court, until after Judge Woods had made his unfavorable ruling. The failure to move for a judge's recusal in a timely fashion is grounds for its denial. *See In re Apex Oil Co.*, 981 F.2d 302, 304 (8th Cir.1992). Moreover, the timing of the motion to recuse Judge Woods, after the

---

**2.** 28 U.S.C. § 455 (1994) provides in relevant part:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b) He shall also disqualify himself in the following circumstances:
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
> (2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;
> (3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;
> (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
> (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
> (i) Is a party to the proceeding, or an officer, director, or trustee of a party;
> (ii) Is acting as a lawyer in the proceeding;
> (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;
> (iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

**3.** Most of the articles cited by the panel as the evidentiary foundation for its decision were published before the September 5, 1995 hearing before Judge Woods. The substance of those articles is presumed to be known as of the date of publication. *See Miller v. Tony & Susan Alamo Found.*, 924 F.2d 143, 147 (8th Cir.1991) ("[T]he matter was known to the defendants when newspaper articles, which constituted the entire basis for the defendants' motion, were published....").

Independent Counsel suffered the adverse ruling, renders the request suspect as a litigation strategy rather than an ethical concern. To this extent, observers could feel the Independent Counsel has politicized this case in an effort to draw a different judge.

In the face of overwhelming precedent, the panel distinguishes the present case by asserting that the timeliness requirement is limited to motions made pursuant to section 455(b). The panel cites no authority for this proposition. Although distinctions between sections 455(a) and 455(b) exist, *see Liteky v. United States,* 510 U.S. 540, ——, 114 S.Ct. 1147, 1163, 127 L.Ed.2d 474 (1994) (Kennedy, J. concurring), this court has never before recognized a distinction between the two sections with respect to timeliness; for example, when denying a criminal defendant's postconviction motion to disqualify, the *Holloway* panel referred to the implicit timeliness requirements of section 455, making no effort to limit this requirement to 455(b). *Holloway,* 960 F.2d at 1355. There is simply neither statutory language nor legislative history nor judicial precedent to support the panel's distinction. Quite to the contrary.

Because section 455 includes no express procedural provisions, courts have developed the appropriate procedures by judicial construction. *Id.* In addition to the fact that the timeliness requirement has been applied to both 455(a) and 455(b) by this and other circuits, *see, e.g., In re Apex Oil Co.,* 981 F.2d at 304; *Yonkers Bd. of Educ.,* 946 F.2d at 183, analysis of the statute's operation and language compels a conclusion converse to that drawn by the panel; if any portion of section 455 requires that a motion be timely made, it is section 455(a). Although the panel asserts that in instances of alleged actual bias "a judge arguably should have an opportunity first to answer the charges of partiality," the real need for a judge to respond lies with a section 455(a) inquiry into the appearances of partiality. Section 455(b) delineates, in clear terms, "instances where actual bias is assumed" and disqualification is required. *Liteky,* 510 U.S. at ——, 114 S.Ct. at 1163

(Kennedy, J. concurring). Thus, if the judge is the spouse of a party to the proceeding, *see* 28 U.S.C. § 455(b)(5)(i), the judge must be disqualified. By contrast, section 455(a) requires disqualification "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Clearly, it is the investigation into perceptions and the reasonableness of those perceptions, not an inquiry into the existence of a carefully defined relationship, that requires the relevant facts and explanations from all sides.

Furthermore, the statutory language of another 455 paragraph also supports the proposition that section 455(a) requires a timely motion. Section 455(e) provides:

> No justice, judge, or magistrate shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

28 U.S.C. § 455(e) (1994). The fact that 455(a) may be waived and 455(b) may not be waived corroborates what can be inferred from the different nature of the two inquiries: timeliness of the recusal request is less important in the case of 455(b). In effect, the panel's interpretation of section 455 creates a broader, implicit waiver under 455(b), the section for which waiver is statutorily precluded, than that which is provided by express statutory language for 455(a).[4] There is no dispute that this court has held that section 455 motions must be timely made. *Holloway,* 960 F.2d at 1355. Having done so, this court inexplicably limits that requirement to the paragraph of section 455 that least demands such a procedural safeguard.

Although it analyzes the merits of the Independent Counsel's request to disqualify Judge Woods under the rubric established by section 455(a), the panel suggests that it is

---

**4.** This is not to say that the Independent Counsel waived his right to seek disqualification. Given that the issue was not raised before the district court, there is no record of disclosure or waiver. This consideration is merely another indication that the panel's interpretation of 455(a)'s procedural requirements is at odds with the statute's structure.

not acting pursuant to its appellate powers under that statute, but rather pursuant to the powers conferred on appellate courts by 28 U.S.C. § 2106.[5] Although we do not dispute this court's power to reassign a case in accordance with its supervisory power, this power has been reserved in the past to unusual cases in which compliance with procedural requirements might be excused. *See In re International Business Machines Corp.,* 45 F.3d at 643 (invoking its § 2106 power to reassign a case after the district court judge denied a motion to recuse and underlying litigation deferred pending motion for a writ of mandamus). The panel mistakenly cites *Dyas v. Lockhart,* 705 F.2d 993 (8th Cir.), *cert. denied,* 464 U.S. 982, 104 S.Ct. 424, 78 L.Ed.2d 359 (1983), as authority for its action. Although this court did reassign the *Dyas* case, the facts in that case were quite different from those presented here. In *Dyas,* Judge Roy had dismissed a habeas petition regarding a fair-trial issue that she had previously decided as a state supreme court judge. *Id.* at 995. We made no explicit findings regarding the appearance of impartiality; instead, we reassigned the case because the judge indisputably had preconceived ideas about the issue to be decided. There is nothing about the Independent Counsel's request that could provide a basis for disregarding normal procedures in this case. Thus, the panel's decision suggests that the procedural requirements may be ignored because litigants may raise the issue directly with the appellate court pursuant to its section 2106 powers. Not only is this proposition at odds with this court's many holdings regarding procedural requirements, it is contrary to the norms of judicial process and the dignity of federal district court judges.

There is good reason for requiring that motions for recusal be made to the district court judge in a timely fashion. Under the procedure employed in this case, the appellate panel had no choice but to decide the reasonability of questions regarding impar-

tiality based on newspaper articles asserting various friendships and reporting that defendant Tucker believes that his investigation is part of a political smear campaign against the President of the United States. This court has always taken a strong stance in upholding the dignity and autonomy of district court judges. To now hold that a judge need not be provided with an opportunity to respond to allegations impugning his ability to be impartial contradicts this strongly-held principle.

## B. The Evidentiary Foundation

Even if the Independent Counsel had made a timely disqualification motion, the panel bases its "appearance of partiality" determination on evidence that was not properly before the court on appeal and lacked sufficient reliability.

### 1. Supplementing the Record

In considering the Independent Counsel's motion for the disqualification of Judge Woods, the panel asked the Independent Counsel to supplement the record by providing the court with copies of the media reports upon which he had based his motion. Although it is within a district court's discretion to reopen a record for evidentiary supplementation, *see Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 331–32, 91 S.Ct. 795, 802–03, 28 L.Ed.2d 77 (1971); *Briscoe v. Fred's Dollar Store, Inc.,* 24 F.3d 1026, 1028 (8th Cir.1994), and an appellate court may remand an issue to the district court for an appropriate evidentiary hearing to develop the record, *see Easley v. University of Mich. Bd. of Regents,* 853 F.2d 1351, 1358 (6th Cir.1988), the panel rejected this course of action. Instead, it asked one party to submit evidence regarding an issue raised for the first time on appeal. The items contained in the supplement were never tested by normal evidentiary standards. Although the panel was undoubtedly acting out of concern for judicial economy, the method

---

5. 28 U.S.C. § 2106 (1994) provides:

The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it

for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

by which it developed the record that formed the basis of the panel's decision is contrary to evidentiary rules and precedent. *See Lussier v. Runyon,* 50 F.3d 1103, 1113 (1st Cir. 1995) (the court's "unilateral pursuit of evidence without affording the parties the standard prophylaxis ... generally obtain[ed] at trial" warrants reversal).

### 2. Reliability of the Evidence

Not only was the inclusion of the media reports into the record improper, the reports themselves are a source of information insufficiently reliable to form the sole basis for the panel's "appearance of partiality" determination. In the context of section 455, this court has been extremely skeptical of press reports as a basis for a finding of partiality. *See, e.g., United States v. Darden,* 70 F.3d 1507, 1536 (8th Cir.1995) (district court's in-court explanation of its remarks quoted in a newspaper article negated implication of judicial bias); *Miller v. Tony & Susan Alamo Found.,* 924 F.2d 143, 146–147 (8th Cir.1991) (untimely-submitted newspaper articles deemed "rank hearsay and demonstrably inaccurate"). These cases, and others, have recognized the great potential for the media to generate inaccurate or misleading information. *See United States v. Cooley,* 1 F.3d 985, 994 (10th Cir.1993) (reporters' personal opinions or characterizations appearing in the media ordinarily should not satisfy the requirements for disqualification under § 455(a)); *Easley,* 853 F.2d at 1356, n. 4 (quoted statements in isolation can misrepresent the tenor of an entire interview or misconstrue a person's intentions). Although the appearance of partiality can result from press reports, it does not necessarily follow that there is a direct correlation between the publication of an allegation and the perceptions of the reasonable public. Moreover, it is injudicious to permit the perceived impartiality of a judge to be held hostage by the writings or reporting of the media without concern for the accuracy of those reports or potential explanation.

The panel disqualifies Judge Woods because it apparently believes that the media reports it cites have created a public perception that Judge Woods cannot act impartially in this case. The practice of relying on newspaper and magazine articles as proof of substantive fact has no support in the rules of evidence. Moreover, as the panel's decision stands, this court will often be asked to act in response to the assumed perceptions created by columnists, writers, and journalists. Editorials, investigative journalism, and other popular writings certainly impact the public's perceptions and have their place in the judicial process. But these kinds of opinions, often biased and colored, cannot substitute for properly-tested evidence.

### C. The Standard for Disqualification Under Section 455(a)

Upon its arrival at the merits of the Independent Counsel's request, the panel sets out to determine whether a "reasonable person who knew the circumstances would question the judge's impartiality, even though no actual bias or prejudice has been shown." *U.S. v. Tucker,* 78 F.3d 1313, 1324 (8th Cir.1996) (citing *Gray v. University of Ark.,* 883 F.2d 1394, 1398 (8th Cir.1989)). Although this accurately states the abstract standard required by section 455(a), the panel's analysis fails to apply that standard in two significant respects: 1) it skews the reasonable person standard from one "who [knows] the circumstances" to one who has read or heard certain allegations, and 2) it enunciates an unworkable, bright-line standard under which any two-step relationship between the presiding judge and a party constitutes an "unmistakable appearance of bias or partiality."

### 1. The Reasonable Person Standard

There is no question but that disqualification for the appearance of partiality is limited to those instances in which a reasonable person would have such doubts. In adopting the 1974 amendments to section 455, Congress cautioned:

in assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality must have a *reasonable* basis. Nothing in this pro-

posed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice.

H.R.Rep. No. 1453, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 6351, 6355. In its decision, the panel ignores the "who knows the circumstances" modifier of the reasonable person standard. Implicitly, the panel asserts that when faced with some information raising a reasonable question regarding a judge's impartiality, a party need not investigate further whether there are equally reasonable answers to those questions; instead, the party may immediately seek that judge's disqualification. We cannot agree. The conclusions drawn by a reasonable person presented with only one side of a story will frequently be different than those made after careful consideration of all circumstances. *See, e.g., Little Rock Sch. Dist. v. Arkansas State Bd. of Educ.,* 902 F.2d 1289, 1292 (8th Cir.1990) (holding that judge's responses to a reasonable neutral observer's questions regarding impartiality sufficient so as not to require disqualification).

The failure to consider all evidence, including potentially reasonable responses that could resolve or mitigate questions regarding impartiality, lacks common sense and fails to acknowledge that there are often simple and reasonable explanations to reasonable perceptions of partiality. *See, e.g., United States v. Darden,* 70 F.3d 1507, 1536 (8th Cir.1995) ("The morning the articles were published, the court explained its remarks to the defendants and the attorneys. This explanation revealed no bias against the defendants."). The most logical source of such counter-evidence is the source of the perceived partiality: the judge. Because Judge Woods had no opportunity to address the Independent Counsel's concerns, the panel is unable to consider any of his potential answers. Instead, the panel places the burden of defending Judge Woods' impartiality with the party opposing the Independent Counsel, Jim Guy Tucker. *See Tucker,* 78 F.3d at

1323 (8th Cir. 1996). This is insufficient for the purposes of a section 455(a) inquiry and an insult to Judge Woods.

By explicitly providing for a party's waiver of any perceived judicial partiality, *see* 28 U.S.C. § 455(e), Congress clearly intended that such perceptions be aired before the presiding judge who might then allay any concerns held by a party. With this legislative intent in mind, we believe that a standard that *does not consider all of the circumstances,* including any response provided by a district court judge, is incorrect. Moreover, it invites forum shopping as parties present evidence of impartiality to appellate courts regarding district court judges who are left without the ability to respond or dispel any allegations or perceptions. A more sensible approach would ask whether a reasonable person, knowing the basis for perceived partiality and any explanation or response to such perceptions, maintains questions regarding the impartiality of a judge. Unfortunately, the panel's lopsided inquiry will ensure frequent and improvident disqualifications in the future.

### 2. The Two–Step Relationship

Our second point of contention with the panel's analysis of the merits pertains to its conclusion of an unmistakable appearance of partiality. The proposition that a two-step relationship, such as a friend of a friend, creates the appearance of partiality must be rejected as overly broad, unpracticable, and inconsistent with our other decisions that limit the scope of perceived partiality to a reasonable standard. *E.g., In re Apex Oil Co.,* 981 F.2d at 304–05 (denying a motion that judge recuse himself despite his tenuous involvement in litigation against the appellee).

A section 455 inquiry will always be fact-intensive, making it difficult to glean broad principles of application. The record in this case is so sparse, however, that it would be difficult not to deduce a bright-line rule requiring disqualification in instances where the judge has a close relationship to someone who has a connection to a party. The record,

as described by the panel,[6] indicates a relationship between Judge Woods and Hillary Clinton of such a nature that Judge Woods would be required to disqualify himself from presiding in a case in which either of the Clintons were a party. The record also indicates that there were some political associations between President Clinton, a former Democratic governor of Arkansas, and defendant Tucker, the current Democratic Governor of Arkansas. Taken on its face, the record does not reveal that the relationship was anything other than political. Nor does the record or the panel suggest that there is any other tie between Judge Woods and defendant Tucker. As such, we cannot help but conclude that this decision establishes a per se rule finding an "unmistakable appearance of partiality" where a party is an associate or friend of an individual who has close connections with the presiding judge. Moreover, given that section 455(b) requires a judge to disqualify herself where she or her spouse is related within the third degree to an individual who is either a party, an acting attorney, or has a substantial interest in the proceeding, it would be inconsistent not to apply the panel's bright-line rule to these individuals who are statutorily marked as creating impermissible questions of bias. Thus, under the standard developed by this panel, a friend or associate of a judge's granddaughter would raise questions of partiality requiring recusal. Clearly, this represents a departure from common sense.

Section 455 was never intended to disqualify judges from presiding over cases in which there might be a tenuous connection between the judge and a party. See In re Apex Oil Co., 981 F.2d at 304–05; United States v. Lovaglia, 954 F.2d 811, 816 (2d Cir.1992); (holding that past social relationship between judge and crime's victim did not create appearance of bias); In re Allied Signal, 891 F.2d 974, 976 (1st Cir.1989) (holding that claim of partiality based on a series of social and business contacts between presiding judge and attorney years before was frivolous). Because the meager record supports a finding of only the most tenuous connection between Judge Woods and defendant Tucker, we maintain that this court has no choice but to reject the assertion of perceived partiality as a matter of law.

### Conclusion

The basis for the decision to reassign this case is unique. This court has considered 28 U.S.C. § 455 over fifty times; the panel's decision today represents a marked departure from these decisions. Reserve Mining Co. v. Lord, 529 F.2d 181 (8th Cir.1976), illustrates the serious nature and circumstances that surround judicial reassignment. In Reserve Mining, we reassigned the action only after the district court judge openly disregarded a mandate of this court and took positions in the litigation more consistent with an advocate than a judge. Id. at 184–86.

If we are to consider the disqualification of any district court judge "in order to preserve the appearance of impartiality," we should do so on the basis of a clear record after the district judge has had an opportunity to respond. With respect to the merits of the panel's decision, being a friend of a friend is not in itself a proper or adequate basis for disqualification. This court has never before based a decision on guilt by association, and now is not the time to start. If this principle is rejected, what becomes clear is that this case was not the result of established norms and procedures, but of special considerations and concerns. Given the highly political nature of this case and the necessity of the court to rule on the merits of the underlying litigation, the departure from common practice regarding the disqualification of a district court judge leaves this court open to the charge of politicization. The panel's decision, therefore, thwarts the very goal of section 455: promotion of public confidence in the impartiality of the judicial process. We have been authorized by Senior Judge Gerald W. Heaney to state that if he were permitted, he would vote to grant the petition for rehearing

---

**6.** Although we reject the evidence relied upon by the panel as a sound basis for its decision, for purposes of this argument we accept the allegations as fact.

en banc with respect to the disqualification issue.[7]

7. We note that Independent Counsel's response to the suggestion for rehearing en banc chose not to address the subject of Judge Woods' disqualification.