_____

No. 95-3268
_____

United States of America,      *
                                 *
       Appellant,           *
                                 *
    v.                    *
                                 *
Jim Guy Tucker; William J.     *   Appeal from the United States
Marks, Sr.; John H. Haley,     *   District Court for the
                               *   Eastern District of Arkansas.
       Appellees.           *
-----------------------------    *
                               *
United States Department of     *
Justice; Sun Diamond Growers    *
of California,               *
                               *
       Amicus Curiae.      *

_____

Submitted: December 12, 1995

Filed: March 15, 1996
_____

Before BOWMAN, BEAM, and LOKEN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

The United States, represented by Independent Counsel Kenneth W. Starr, appeals from an order of the District Court dismissing an indictment brought against Jim Guy Tucker, William J. Marks, Sr., and John H. Haley. The court ruled that the Office of Independent Counsel (OIC) has no jurisdiction to prosecute the case. We reverse.

On August 5, 1994, the Division for the Purpose of Appointing Independent Counsels (commonly known and herein referred to as the Special Division), pursuant to a request from United States Attorney General Janet Reno, appointed Starr as Independent Counsel

> to investigate to the maximum extent authorized by the Independent Counsel Reauthorization Act of 1994 whether any individuals or entities have committed a violation of any federal criminal law, other than a Class B or C misdemeanor or infraction, **relating in any way** to James B. McDougal's, President William Jefferson Clinton's, or Mrs. Hillary Rodham Clinton's relationships with Madison Guaranty Savings & Loan Association, Whitewater Development Corporation, or Capital Management Services, Inc.

In re Madison Guar. Sav. & Loan Ass'n, Div. No. 94-1, Order at 1-2 (D.C. Cir. Sp. Div. Aug. 5, 1994) (emphasis added).[1] The order further conferred upon Starr "jurisdiction and authority to investigate other allegations or evidence of violation of any federal criminal law . . . **by any person or entity developed during the Independent Counsel's investigation referred to above and connected with or arising out of that investigation**." Id. at 2 (emphasis added). The OIC also was empowered to investigate any obstruction of justice "in connection with any investigation of the matters described above." Id. Finally, the Special Division vested in the Independent Counsel "jurisdiction and authority to seek indictments and to prosecute any persons or entities involved in any of the matters described above, who are reasonably believed to have committed a violation of any federal criminal law arising out of such matters." Id. In sum, the court ordered that the Independent Counsel "shall have prosecutorial jurisdiction to **fully investigate and prosecute** the subject matter with respect to which

---

[1]Under 28 U.S.C. § 49 (1994), the Chief Justice appoints three judicial officers to serve two-year terms for this division of the United States Court of Appeals for the District of Columbia.

the Attorney General requested the appointment of independent counsel, as hereinbefore set forth, and **all matters and individuals whose acts may be related to that subject matter**," including crimes "that may arise out of the above described matter."  Id. at 3 (emphasis added).

Starr succeeded Robert B. Fiske, Jr., who had been appointed by the Attorney General in January 1994 pursuant to 28 C.F.R. § 600.1 (1993) (after the 1987 statutes reauthorizing appointment of independent counsel had expired, and before the OIC was reauthorized again in June 1994), both in the position and in his scope of authority as Independent Counsel. Fiske had been appointed, in turn, to replace a team of lawyers from the fraud section of the criminal division of the Justice Department, which had taken over the Madison Guaranty Savings & Loan Association investigation in November 1993 when Paula Casey, United States Attorney for the Eastern District of Arkansas, recused herself and her staff from the investigation and prosecution of matters concerning Madison Guaranty and Capital Management Services (CMS).

By letter dated September 2, 1994, the Acting Assistant Attorney General, Criminal Division, responding to Starr's August 31 request, referred to the OIC "investigative and prosecutorial jurisdiction over . . . [w]hether any person committed any federal crime relating to the bankruptcy action entitled In Re: Landowners Management System, Inc., Tax Identification No 75-2001914, Debtor, United States Bankruptcy Court, Northern District of Texas, Case No. 787-70392 (Chapter 11)."  The letter noted that the Attorney General had agreed that this matter, and another that was redacted from the record that is before us in this case, are related to the OIC's investigation.  Letter from John C. Keeney, Acting Assistant Attorney General, Criminal Division, to Kenneth W. Starr (Sept. 2, 1994).  The Independent Counsel sought referral, and the Attorney General granted it, pursuant to 28 U.S.C. § 594(e) (1994), which provides, as relevant here:  "An independent counsel may ask the

Attorney General or the division of the court to refer to the independent counsel matters related to the independent counsel's prosecutorial jurisdiction, and the Attorney General or the division of the court, as the case may be, may refer such matters."  Out of what the Independent Counsel referred to during oral argument of this appeal as "an abundance of caution," the Independent Counsel in December 1994 also sought referral jurisdiction over the investigation and prosecution of federal criminal matters relating to the Landowners Management System (LMS) bankruptcy (among other matters) from the Special Division.  On December 19, the Special Division issued an Order of Referral, a paragraph of which precisely tracks the Attorney General's September 2, 1994, referral to the OIC of all investigative and prosecutorial jurisdiction over federal criminal matters relating to the LMS bankruptcy.

The OIC's criminal investigation of matters relating to the LMS bankruptcy culminated on June 7, 1995, when a grand jury for the Eastern District of Arkansas issued the indictment that is the subject of this appeal.  Governor of Arkansas Jim Guy Tucker, his Little Rock lawyer John H. Haley, and his San Francisco business partner William J. Marks, Sr., were variously charged with tax fraud; bankruptcy fraud; making false material statements for the purpose of influencing CMS, a federally licensed management company in Arkansas; and conspiracy to commit various of these acts.  The specifics of the indictment are discussed in further detail as necessary to the discussion in Part II of this opinion.

The case was assigned to Judge Henry Woods,[2] who on September 5, 1995, held a hearing on the defendants' motions to dismiss.  Within a few hours, the court issued a twenty-one-page

---

[2]United States District Judge for the Eastern District of Arkansas.

order and opinion dismissing the indictment on the ground that the OIC lacked prosecutorial jurisdiction over this case.

I.

The Independent Counsel's first issue on appeal was addressed by the District Court somewhat summarily and with little legal analysis: whether the courts have the authority to review the Attorney General's decision under 28 U.S.C. § 594(e) to refer jurisdiction to the OIC. We review this question of law <u>de novo</u> and hold that the Attorney General's exercise of her discretion to refer matters to the OIC for investigation and prosecution is not reviewable.

An independent counsel, of course, is not an ordinary United States attorney. The counsel is appointed by the judiciary (the Special Division) at the behest of the Attorney General. 28 U.S.C. §§ 593(b)(1), 592(c)(1) (1994). The scope of counsel's prosecutorial jurisdiction is delineated by the Special Division. <u>Id.</u> § 593(b)(1). Counsel may be removed only by impeachment and conviction, or "by the personal action of the Attorney General and only for good cause, physical or mental disability . . ., or any other condition that substantially impairs the performance of such independent counsel's duties." <u>Id.</u> § 596(a)(1) (1994). The independent counsel law specifically provides that the United States District Court for the District of Columbia has jurisdiction to review a removal decision of the Attorney General upon petition by the ousted independent counsel. <u>Id.</u> § 596(a)(3) (1994). The Special Division, or the independent counsel, may terminate an OIC when an investigation and any resulting prosecutions are substantially completed. <u>Id.</u> § 596(b) (1994). The independent counsel is subject to congressional oversight, <u>id.</u> § 595 (1994),

and must make periodic reports to the Special Division, id. § 594(h) (1994).[3]

The unusual nature of the office notwithstanding, a duly appointed independent counsel is a prosecutor for the United States, and prosecutorial decisions of the nature here in question--who should be prosecuted and for what alleged crimes--have long been committed to the discretion of the prosecutor.[4]  "In our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute. . . . This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review."  Wayte v. United States, 470 U.S. 598, 607 (1985) (quoting United States v. Goodwin, 457 U.S. 368, 380 n.11 (1982)); see also Massey v. Smith, 555 F.2d 1355, 1356 (8th Cir. 1977) (per curiam) ("The authority to decide against whom federal indictments shall be sought lies almost exclusively with the United States Attorneys or the Justice Department, and their decisions in this regard are not generally subject to judicial review.").

Although prosecutorial discretion is not the precise issue here, we do not see any reason to believe that the Attorney General's referral decision is any more subject to judicial review

---

[3]The Supreme Court has held that the independent counsel law does not violate the Appointments Clause, Article III, or the separation of powers principles of the Constitution.  Morrison v. Olson, 487 U.S. 654 (1988).

[4]As the Supreme Court noted in Wayte v. United States, 470 U.S. 598, 608 (1985), a prosecutor's decisions are not free from scrutiny when the challenge is to the constitutionality of those decisions, such as selective prosecution that violates the Equal Protection Clause.  See United States v. Batchelder, 442 U.S. 114, 125 & n.9 (1979).  But there is no constitutional right of a criminal defendant to choose his or her prosecutor and thus there can be no constitutional dimension to the challenge to the prosecutor's jurisdiction when it is conceded, as it is here, that there is some federal prosecutor who is empowered to bring the charges on which the appellees have been indicted.

than the usual prosecutorial decisions. But we need not rest our decision on intuition guided by a consideration of prosecutorial discretion and its unreviewability in its ordinary contexts, for the definitive answer to the question of reviewability in this case is found in legislative history that cannot be ignored (although the appellees and the District Court elected to do just that).

In 1987, the second time legislation establishing the independent counsel process was reauthorized, the conferees discussed the possibility of codifying the holdings of Dellums v. Smith, 797 F.2d 817 (9th Cir. 1986), and Banzhaf v. Smith, 737 F.2d 1167 (D.C. Cir. 1984) (en banc) (per curiam) (the legislative history incorrectly referred to the case as Banzhai v. Smith), wherein two circuit courts of appeals "properly reflect[ed] legislative intent" by concluding "that no judicial review is available of decisions by the Attorney General not to conduct preliminary investigations." H.R. Conf. Rep. No. 452, 100th Cong., 1st Sess. 22 (1987), reprinted in 1987 U.S.C.C.A.N. 2185, 2188.[5] The joint statement explained, however, that such a provision was not included in the jointly proposed legislation "because the conferees did not wish to suggest, by indicating a lack of judicial review of Attorney General decisions on preliminary investigations, that judicial review might be available of other Attorney General decisions under this chapter." Id. Thus one might quite logically conclude that, where Congress did intend there to be judicial

_____

[5]The court in Banzhaf v. Smith, 737 F.2d 1167, 1168 (D.C. Cir. 1984) (en banc) (per curiam), held "that Congress specifically intended in the Ethics in Government Act to preclude judicial review, at the behest of members of the public, of the Attorney General's decisions not to investigate or seek appointment of an independent counsel with respect to officials covered by the Act." The court in Dellums v. Smith, 797 F.2d 817, 823 (9th Cir. 1986), reached the same conclusion, noting its view, based on its reading of 28 U.S.C. § 595 (1994)--the provision concerning congressional oversight of the OIC--that Congress intended "that enforcement by members of congressional judiciary committees would be effective in preventing the Attorney General from refusing to obey the law."

-7-

review of Attorney General decisions, it specifically ordained judicial review, as it did when providing for judicial review of an Attorney General's decision to remove an independent counsel. To be certain that its point--that unreviewability of the Attorney General's decisions is the rule when the independent counsel law does not expressly provide otherwise--was not missed, the Committee stated, in no uncertain terms that "[t]he conferees agree that **an Attorney General's determinations under the independent counsel law are not subject to judicial review**." Id. (emphasis added). The District Court and all the appellees studiously ignore this compelling language from the legislative history, despite the fact that it was brought to their attention, evidently finding it impossible to challenge.[6] We too think it is irrefutable, and conclude that this legislative history, which confirms the conclusion one logically would reach by reading the statute, settles the question. For us to hold otherwise would subvert congressional purpose in creating and empowering the independent counsel and in structuring the office as it did.

United States v. Juvenile Male, 923 F.2d 614 (8th Cir. 1991), to which the appellees direct our attention for the proposition

---

[6]In an apparent effort to avoid the illuminating legislative history concerning review of the Attorney General's decisions under the independent counsel law, the appellees urge that they are actually seeking (or, in addition, they are seeking) review of the Independent Counsel's decision to ask the Attorney General to refer, and his decision to accept referral of, the matters in question. This argument is specious. Any possible issue relating to counsel's decision to seek or to accept referral in this case is mooted by the decision of the Attorney General to refer the matters in question to the jurisdiction of the Independent Counsel. The contentions that it is the referral from the Special Division that is challenged here and that the courts may review that referral strike us as being even more specious, but in fact we need not and do not consider them. Referral by the Special Division, as noted above, was redundant and unnecessary. Given that the Attorney General has authority to make the referral independently, and did so here, the additional, identical referral by the Special Division, though it may be a source of additional comfort to the OIC, is a moot point in this appeal.

that the Attorney General's referral is reviewable, is inapposite.  In Juvenile Male, the issue was the reviewability of the Attorney General's decision to certify, under the Juvenile Justice and Delinquency Prevention Act, that the crime with which a juvenile was charged was a "crime of violence."  The Court held that the certification in question was reviewable.  Cf. United States v. C.G., 736 F.2d 1474 (11th Cir. 1984) (holding certification under the Act that appropriate state court did not have jurisdiction was not reviewable); United States v. Vancier, 515 F.2d 1378 (2d Cir.) (same), cert. denied, 423 U.S. 857 (1975).  We stated, "While this court may not have the power to guide a federal prosecutor's discretion, we must insure that the exercise of that discretion is within the confines" of the statute.  Juvenile Male, 923 F.2d at 617-18.  The argument that the Juvenile Male holding is applicable here ignores the definitive legislative history of the law reauthorizing the OIC that clearly evidences Congress's intent that (unless otherwise provided in the statute) the Attorney General's decisions under the independent counsel law are nonjusticiable.  Further, the question whether a juvenile has been charged with a "crime of violence" is easily reviewed by a court and is well within the expertise of the judiciary.  The "relatedness" determination at issue here, on the other hand, is an exercise of a discretion that only the prosecutor and the Attorney General command, because of their intimate knowledge of the course of the investigation, including witness statements, and of other proceedings that may be ongoing before the grand jury.  That is, the "relatedness" question is largely without the standards that the judiciary typically requires for review, another reason for entrusting it, as Congress has, to the broad (and unreviewable) discretion of the Attorney General.

Reliance on Gutierrez de Martinez v. Lamagno, ___ U.S. ___, 115 S. Ct. 2227 (1995), in support of the appellees' position also is misplaced. Gutierrez was a case decided under the terms of the Westfall Act, which authorizes the Attorney General to certify that

a federal employee sued for a wrongful or negligent act was acting within the scope of employment at the time of the alleged act, so that the United States is substituted for the defendant. In the ordinary case, such certification would allow a plaintiff to maintain an action under the Federal Tort Claims Act (FTCA), although because of an exception to the FTCA the result in Gutierrez was just the opposite, and the United States retained its sovereign immunity from suit. The issue in Gutierrez was the reviewability of that certification. The Court noted two factors that "weigh[ed] heavily" in its analysis: that "the Attorney General herself urge[d] review," and that review is generally available "when a government official's determination of a fact or circumstance . . . is dispositive of a court controversy." Id. at ___, 115 S. Ct. at 2231.

Neither factor is present here. In this case, the Department of Justice, as amicus curiae, agrees with the Independent Counsel that the Attorney General's referral is not reviewable. Further, as is apparent from the District Court's unchallenged acknowledgement that these defendants properly may be prosecuted by the United States Attorney for the Eastern District of Arkansas (who has recused herself from matters concerning CMS) or by the Attorney General (who made the referral to the OIC), the Attorney General's referral does not "instruct[] a court automatically to enter a judgment pursuant to a decision the court has no authority to evaluate." Id. at ___, 115 S. Ct. at 2234. The absence of judicial review of the discretionary referral decision merely allows the prosecution to proceed without the delay that judicial review inevitably would entail; it does not direct the outcome of the prosecution. Further, unlike the situation in Gutierrez, this is not a case where the Attorney General has a vested interest in the referral such that she "is hardly positioned to act impartially." Id. at ___, 115 S. Ct. at 2233.

At oral argument we were directed to the admonition of the <u>Gutierrez</u> Court that "judicial review of executive action `will not be cut off.'" <u>Id.</u> at ___, 115 S. Ct. at 2231 (quoting <u>Abbott Lab. v. Gardner</u>, 387 U.S. 136, 140 (1967)).  But considering our reading of the independent counsel law and the uncontroverted legislative history we have discussed above, the full, unabridged language of the Court does not support the appellees' position, and actually supports our holding that the Attorney General's referral decisions are nonjusticiable:  "Accordingly, we have stated time and again that judicial review of executive action `will not be cut off **unless there is persuasive reason to believe that such was the purpose of Congress**.'"  <u>Id.</u> (emphasis added).  It is fair to say that the "reason to believe" here is more than just "persuasive," it is beyond reasonable dispute.

Accordingly, we hold that the Attorney General's referral decision under § 594(e) is not reviewable and that the District Court erred in holding otherwise.

II.

Even if the courts had jurisdiction to review the Attorney General's "relatedness" determination under § 594(e), which in Part I of this opinion we have held the courts do not have, we nevertheless would reverse the District Court, which reviewed the "relatedness" issue and disagreed with the Attorney General's determination.  We begin our discussion of "relatedness" with a look at the factual basis, according to the indictment, for the charges against Tucker, Marks, and Haley.

The grand jury's indictment of June 7, 1995, was the culmination of an investigation that began on Independent Counsel Fiske's watch.  The indictment alleged that Tucker and Marks made false material statements to CMS for the purpose of securing a $300,000 loan.  Tucker and Marks represented to CMS that the loan

was for investment in D & L Telecommunications, Inc., when in fact it was used as part of the cash collateral pledged for a personal loan of $8.5 million from Fleet National Bank. Allegedly, $6 million of that loan was used to purchase controlling interest in Planned Cable Systems Corporation (PCS), a cable television company in which Marks, who was president of the company, already was a minor shareholder. According to the indictment, Haley acquired a "shelf" corporation, that is, one with no assets or operations, in Texas, called LMS. The appellees merged PCS into LMS and Marks was named president. In November 1987, LMS filed a fraudulent bankruptcy in the Northern District of Texas. The proposed reorganization plan, approved by all creditors listed in the bankruptcy schedules before LMS even filed its bankruptcy petition, transferred valuable cable television assets to Tucker, the only secured creditor listed, and to a corporation controlled by Tucker, listed as an unsecured creditor. The indictment alleges that this scheme was undertaken to avoid paying $4 million in taxes that would have been owed on a sale of the cable television assets.

Also relevant here is an indictment from the same grand jury handed down on August 17, 1995, after the arguments on the question of dismissal had been briefed to the District Court. The indictment charged Tucker, James McDougal, and Susan McDougal with fraudulent loan schemes involving Madison Guaranty and CMS.

As we mentioned in our discussion in Part I, "relatedness" in the context at issue here is an essentially standardless concept and, as the statute is written, one that is exceedingly broad. Section 594(e) requires only that referred matters be "related to the independent counsel's prosecutorial jurisdiction." The term "related" is undefined and without parameters. Congress did not indicate the degree of consanguinity between matters that should be evident before jurisdiction may be properly asserted by the OIC (further indication, we might add, that it was to be a determination entrusted to the discretion of the Attorney General).

We also think it is relevant to note that the original jurisdiction of this OIC, which is not at issue here, includes authority "to investigate other allegations or evidence of violation of any federal criminal law . . . **by any person or entity developed during the Independent Counsel's investigation** referred to above **and connected with** or arising out of **that investigation**."[7]  In re Madison Guar. Sav. & Loan Ass'n, Div. No. 94-1, Order at 2 (emphasis added); see also 28 U.S.C. § 593(b)(3) (1994) (scope of prosecutorial jurisdiction).  Arguably, the prosecutions at issue fall within the broad grant of original prosecutorial jurisdiction without a referral even being necessary.  See United States v. Wilson, 26 F.3d 142, 148 (D.C. Cir. 1994) ("[T]he scope of a special prosecutor's investigatory jurisdiction can be both wide in perimeter and fuzzy at the borders."), cert. denied, ___ U.S. ___, 115 S. Ct. 1430 (1995).  Even so, the OIC sought and received a referral from the Attorney General, which set forth with

---

[7]The appellees seem to contend in parts of their argument that the Independent Counsel is relying on "arising out of" jurisdiction, as set forth in two places in the original grant of jurisdiction, for his referral jurisdiction.  See also 28 U.S.C. § 593(b)(3) (1994) (scope of prosecutorial jurisdiction "shall also include the authority to investigate and prosecute Federal crimes . . . that may arise out of the investigation or prosecution of the matter").  They argue that the "arising out of" language concerns the investigation or prosecution of a crime committed as a direct result of the OIC's investigation or prosecution, that is, an obstruction of justice crime such as perjury.  We need not decide whether "arising out of" as variously used in the original grant of jurisdiction should be so narrowly interpreted, as the OIC has jurisdictional authority to investigate and prosecute not only obstruction of justice crimes related to his grant of authority but also to investigate matters "developed during the Independent Counsel's investigation . . . and connected with **or** arising out of that investigation." In re Madison Guar. Sav. & Loan Ass'n, Div. No. 94-1, Order at 2 (D.C. Cir. Sp. Div. Aug. 5, 1994) (emphasis added).  Further, in order to acquire referral jurisdiction over a matter, the OIC does not need to rely on either the "arising out of" or the "connected with" language to justify his request; the referred matters need only be "related."  28 U.S.C. § 594(e) (1994).

specificity the additional criminal matters to be investigated and possibly prosecuted by the OIC.

Considering the open-ended phrasing of § 594(e) and the expansive jurisdiction originally granted the OIC, we believe that the association between the original jurisdiction and the jurisdiction sought via referral need not be as intimate as the appellees suggest.[8]  The appellees argue that the matters must be "demonstrably related" in order for referral jurisdiction to be proper.  That language is excerpted from Morrison v. Olson, 487 U.S. 654 (1988), wherein the Supreme Court addressed the constitutionality of the independent counsel provisions of the Ethics in Government Act.  Reference to the Court's entire discussion, however, makes it clear that the Court was not delimiting "relatedness" for the purpose of referral jurisdiction.  Instead, the Court was observing that, due to the temporary nature of the OIC, "the nature and duties of which will by necessity vary with the factual circumstances giving rise to the need for an appointment in the first place," Congress properly conferred upon the Special Division the authority "to define the scope of the office."  Id. at 679.  The Court went on:

> This said, we do not think that Congress may give the Division unlimited discretion to determine the independent counsel's jurisdiction.  In order for the Division's definition of the counsel's jurisdiction to be truly "incidental" to its power to appoint, the jurisdiction that the court decides upon must be demonstrably related to the factual circumstances that gave rise to the Attorney General's investigation and

---

[8]We reject the suggestion that the OIC has disavowed any relation between the indictment in this case and the Independent Counsel's original jurisdiction.  We agree with the OIC that this is an obvious distortion of the Independent Counsel's position, which from the initial request for referral always has been that the matter with respect to which the OIC sought referral and the original grant of jurisdiction are indeed related within the meaning of the statute.

-14-

> request for the appointment of the independent counsel in the particular case.

Id. It is clear that the limitation in question (assuming, as do the appellees, that "demonstrably related" is a genuine limitation) was upon the authority of the Special Division to define jurisdiction in the first instance, and was the result of the constitutional concerns (appointments clause and separation of powers) generated by Congress's decision to vest executive powers in the judiciary (the Special Division). "Demonstrably related" is not, as Marks asserts, "[t]he applicable legal standard for evaluating whether the Independent Counsel has authority to prosecute the instant case." Brief of Appellee Marks at 13. We do not agree that the subject matter of the referral jurisdiction must be "demonstrably related" either "`to the factual circumstances' that give rise to the appointment," Brief of Appellee Tucker at 10, or "to the subject matter of the Independent Counsel's jurisdiction," Brief of Appellee Marks at 13.[9] We thus reject the appellees' contention that the subject matter of the referral jurisdiction is required to relate to James McDougal's or President Clinton's or Mrs. Clinton's relationship to CMS or Madison Guaranty or the Whitewater Development, which is the subject matter of the Independent Counsel's original investigatory jurisdiction. If that were the test for a proper referral, then referral never would be necessary and § 594(e) would be superfluous. We think it is clear that, contrary to the appellees' arguments, relatedness for purposes of referral under § 594(e) depends upon the procedural and factual link between the OIC's original prosecutorial jurisdiction and the matter sought to be referred.

---

[9]Haley simply argues that the independent counsel law and Morrison "require that matters to be referred must be `demonstrably related,'" Brief of Appellee Haley at 5, although to what they must be so related is not stated.

-15-

The matters over which the OIC sought referral jurisdiction were developed during the investigation conducted by the OIC under the original grants of jurisdiction, first the jurisdiction of the regulatory Independent Counsel (Fiske) and then the statutory Independent Counsel (Starr).  It is apparent from the record before us, even though grand jury proceedings to which we are not privy continue, that there is overlap in witnesses and in defendants between the original prosecutorial jurisdiction (see August 17, 1995, indictment) and the referral jurisdiction (see June 7, 1995, indictment).  Further, as the August 17 indictment demonstrates, there is a clearly defined relationship between Tucker (referral) and McDougal (original), Tucker (referral) and CMS (original and referral), and Tucker (referral) and Madison Guaranty (original).  (CMS was an entity named in the original grant of jurisdiction and allegedly defrauded by the activities charged in the August 17 indictment, and material false statements to CMS by Tucker and Marks constitute a part of the charges in the June 7 indictment.)  We have no difficulty in concluding that the required relatedness between original and referral jurisdiction is present here.

The appellees further argue that they are not "persons" within the meaning of 28 U.S.C. § 591 (1994) who can be investigated by the OIC, and therefore they cannot be prosecuted by the OIC for wrongdoing.  The covered "persons" described by § 591(b) are high-ranking federal executive officials and national campaign committee officers.  Tucker, Marks, and Haley are outside the definition.  But § 591(b) refers to persons to whom § 591(a) applies, and § 591(a) sets out the requirement of a preliminary investigation by the Attorney General:

The Attorney General shall conduct a preliminary

investigation in accordance with section 592 whenever the Attorney General receives information sufficient to constitute grounds to investigate whether any person described in subsection (b) may have violated any Federal criminal law . . . .

Thus it is the alleged culpability of a covered "person" that may require the Attorney General to conduct an initial preliminary investigation. But the ultimate scope of jurisdiction of the OIC--whom he may investigate and whom he may prosecute--as determined by the Special Division, is not necessarily limited to covered persons, and neither is referral jurisdiction. Moreover, referral jurisdiction requires only relatedness to the original prosecutorial jurisdiction; nowhere do the OIC provisions require that a § 591 preliminary investigation into the involvement of covered persons be conducted before a matter may be referred to an existing OIC. Finally, the appellees' argument is in any event inapposite to their case, for here the Attorney General originally sought the appointment of independent counsel under 28 U.S.C. § 591(c) because the investigation and prosecution would present a "political conflict of interest," not because covered persons were the targets.

The appellees also argue that the Independent Counsel was, in reality, seeking expansion jurisdiction, not referral jurisdiction, and that he did not comply with the requirements of expansion jurisdiction, or, in the alternative, that he **should** have sought expansion jurisdiction instead of referral jurisdiction. Expansion jurisdiction may be granted to the OIC by the Special Division upon the request of the Attorney General, if possible violations of criminal law by § 591(b) "covered persons" that are outside the prosecutorial jurisdiction of the OIC come to the attention of the independent counsel. 28 U.S.C. § 593(c) (1994). If, after a 28 U.S.C. § 592 (1994) preliminary investigation, the Attorney General determines that further investigation is warranted, the Special Division then must either expand the existing OIC's jurisdiction or

appoint another independent counsel.  The argument that the Independent Counsel and the Attorney General failed to comply with the requirements of § 593(c) (expansion jurisdiction) is irrelevant to this case, because in fact the Independent Counsel did not seek expansion jurisdiction.  He clearly sought--and received--referral jurisdiction under § 594(e), obviating any need to comply with the requirements for expansion jurisdiction.  As for the contention that the Independent Counsel should have sought expansion jurisdiction in the first place, and not referral jurisdiction,  our decision that referral was proper because the referred matter is related to the Independent Counsel's prosecutorial jurisdiction renders this argument moot.

Assuming for the sake of argument that the discretion exercised by the Attorney General in referring "related" matters to the OIC is reviewable, and giving the Attorney General the deference that is due such discretionary decisions, we hold that she did not abuse her discretion in determining that the subject matter of the referral jurisdiction in this case is "related" to the Independent Counsel's original prosecutorial jurisdiction within the meaning of 28 U.S.C. §  594(e).  The OIC has jurisdiction to prosecute this case.

## III.

We come now to the Independent Counsel's request that this case be assigned to a judge other than Judge Woods upon remand to the District Court.  We conclude that this request must be granted to preserve the appearance of impartiality.

The Independent Counsel relies primarily on newspaper articles to support his request.[10]  First, there are articles that connect Judge Woods and Hillary Rodham Clinton.  Judge Woods appointed her as counsel for a special committee in the Pulaski County, Arkansas, school desegregation case, and was quoted as saying that he "did work with Hillary" and that he "came to admire her during that period."  Rex Nelson, Road to Tucker trial full of twists for Judge Woods, Ark. Democrat-Gazette, Sept. 3, 1995, at 1A, 20A; see also Connie Bruck, Hillary the Pol, New Yorker, May 30, 1994, at 58, 69.  In the Arkansas Democrat-Gazette article, the newspaper reported that Judge Woods said, "If anything came up regarding President Clinton, I would recuse," because of the Judge's relationship with Hillary Clinton.  Nelson, supra, at 20A.  A column in a daily periodical with national--actually international--circulation reported that Judge Woods wrote to then Deputy White House Counsel, the late Vincent Foster, in July 1993 to ask whether he should grant an interview where the topic was to be Hillary Rodham Clinton.  Micah Morrison, Arkansas Judge Runs the Clock on Whitewater, Wall St. J., Oct. 4, 1995, at A14.  Finally, in a column criticizing efforts "to get federal Judge Henry Woods, a Democratic appointee, off Gov. Jim Guy Tucker's criminal case," the author acknowledged, "Indeed, the judge spent the night at the White House the night Republicans swept a majority of Congress last November."  Max Brantley, Political notebook, Ark. Times, June 30, 1995, at 16.

For their part, President and Mrs. Clinton have been reported to have expressed continued support for Tucker since his indictment by the grand jury.  It was reported in an article on the front page of the Arkansas Democrat-Gazette that, the day after Tucker pleaded

_____

[10]In order to adequately consider the Independent Counsel's argument for reassignment, once having determined that his request is properly ours to grant, see infra, we asked the OIC to supplement the record by providing to the Court copies of the articles upon which he relies.

not guilty to the charges in this case, the Clintons attended a fund-raising luncheon in Little Rock, Arkansas, where Tucker received a "sustained standing ovation."  Noel Oman & Peter Aronson, <u>Clinton lunch also a feast for Tucker</u>, Ark. Democrat-Gazette, June 24, 1995, at 1A.  At the event, solidifying his connection with the recently indicted Tucker, the President said in a speech, "I am especially glad to see Governor and Mrs. Tucker here today and especially grateful for the reception you gave them."  <u>Id.</u> at 12A.  Tucker also acknowledged the perceived connection when he was quoted in an interview as saying of the OIC, "I think that's been much of their goal, to try and tar the [P]resident with images of wrongdoing here in his home state."  <u>Inside Politics</u> (Cable News Network, Inc., television broadcast, June 21, 1995).

The appellees object to the Independent Counsel's request on several grounds, among them:  that the issue was not raised in the District Court and is raised now only because the Independent Counsel did not like the result reached in the proceeding below; that "the motion is . . . frivolous because it is obviously premature to raise such a motion in an appellate court," Brief of Appellee Marks at 38; that Judge Woods's political affiliation, and the Independent Counsel's affiliation with another political party, comprise the basis for the argument; and that the argument is "an improper vehicle for the publication of a personal attack on Judge Woods for the purpose of distracting this Court from a proper review of the district court's dismissal ruling on its merits," <u>id.</u>  Most of the appellees' claims are undeserving of comment, and we summarily reject the suggestion that appellant's brief is evidence that Judge Woods's political persuasion forms the basis for the Independent Counsel's request.  Nowhere do the appellees give us reasons for concluding that the matters the Independent Counsel has brought to our attention do not create an appearance of bias.

-20-

We also reject the contention that the Independent Counsel's request is improperly made to this Court in the first instance rather than to Judge Woods. The appellees' arguments stem from their confusion about the source of our power to grant the OIC's request. "Federal appellate courts' ability to assign a case to a different judge on remand rests not on the recusal statutes alone, but on the appellate courts' statutory power to `require such further proceedings to be had as may be just under the circumstances,' 28 U.S.C. § 2106." Liteky v. United States, ___ U.S. ___, ___, 114 S. Ct. 1147, 1156-57 (1994). Thus we are empowered to "direct the entry of such appropriate . . . order . . . as may be just under the circumstances," 28 U.S.C. § 2106 (1994), including reassignment of the case where, in the language of 28 U.S.C. § 455(a) (1994), the district judge's "impartiality might reasonably be questioned." See Dyas v. Lockhart, 705 F.2d 993, 997-98 (8th Cir.) (remanding to another district judge to assure the appearance of impartiality, notwithstanding that appeal was from court's failure to recuse sua sponte and the issue was never raised in the district court), cert. denied, 464 U.S. 982 (1983).

The Independent Counsel does not seek review of Judge Woods's failure to disqualify himself under 28 U.S.C. § 144 (1994), which requires the party seeking recusal to timely file an affidavit alleging facts showing bias with the district judge that he wishes to be disqualified. Unlike § 144, § 455 sets forth no procedure for seeking recusal in the district court. See Liteky, ___ U.S. at ___, 114 S. Ct. at 1153 (as distinguished from § 144, § 455 "place[s] the obligation to identify the existence of those grounds upon the judge himself, rather than requiring recusal only in response to a party affidavit"). The appellees' reliance on either the language of § 144 or on cases interpreting § 144 is misplaced.

Further, the Eighth Circuit cases cited by the appellees are distinguishable. See United States v. Bauer, 19 F.3d 409, 414 (8th

Cir. 1994) ("This Court has held that claims under § 455 `will not be considered unless timely made.'") (quoting Holloway v. United States, 960 F.2d 1348, 1355 (8th Cir. 1992)). This is not a case like Bauer and Holloway where actual bias under § 455(b) is alleged, and where a judge arguably should have an opportunity first to answer charges of partiality. See 28 U.S.C. § 455(b) (1994) (requiring recusal in cases of actual bias, conflicts of interest, and where certain relatives of the judge are involved in the proceedings before the court). Nor is the Independent Counsel seeking to have the judgment vacated on appeal as a remedy for the judge's failure to recuse. In fact, the Independent Counsel seeks no appellate review at all. Rather, he asks to have the case reassigned to a judge other than Judge Woods, under the § 2106 powers of this Court, in the event we reverse the dismissal of the indictment and remand the case for trial. The Independent Counsel made his request for reassignment in his appellant's brief. Under § 2106, that is all that is required to make the request timely.

We turn now to the merits of the OIC's request. Under § 455(a), "disqualification is required if a reasonable person who knew the circumstances would question the judge's impartiality, even though no actual bias or prejudice has been shown." Gray v. University of Ark., 883 F.2d 1394, 1398 (8th Cir. 1989). Section 455(a) "was designed to promote public confidence in the integrity of the judicial process by replacing the subjective `in his opinion' standard with an objective test." Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 858 n.7 (1988). In determining, then, whether remand to a different district judge is warranted to achieve the goal of ensuring "the appearance of impartiality," we apply "an objective standard of reasonableness." United States v. Poludniak, 657 F.2d 948, 954 (8th Cir. 1981), cert. denied, 455 U.S. 940 (1982). It is the appearance of bias or partiality that matters here, not actual bias.

The Independent Counsel argues that, because of the "unmistakable appearance" of bias or partiality here, "[r]eassignment is necessary to preserve the appearance and reality of justice." Brief of Appellant at 42. We agree. Based on the information before us in this case, we conclude that the risk of a perception of judicial bias or partiality is sufficiently great so that our proper course is to order reassignment on remand.[11] As we have discussed, Judge Woods's link with the Clintons and the Clintons' connection to Tucker have been widely reported in the press. Moreover, as the Independent Counsel has noted, "this case will, as a matter of law, involve matters related to the investigation of the President and Hillary Rodham Clinton." Reply Brief of Appellant at 25. Given the high profile of the Independent Counsel's work and of this case in particular, and the reported connections among Judge Woods, the Clintons, and Tucker, assignment to a different judge on remand is required to insure the perception of impartiality.

As a practical matter, there is no shortage of other judges in the Eastern District of Arkansas to whom this case may be assigned. Apart from whatever time Judge Woods spent in ruling on the motion

---

[11]The Independent Counsel also directs our attention to certain comments in the District Court's opinion, which were reported in the local Arkansas press, that, in the view of the OIC, "displayed hostility to the Independent Counsel system." Brief of Appellant at 46-47. We do not consider these comments to be persuasive evidence of a perceived bias or partiality.

> [J]udicial remarks during the course of a trial that
> are critical or disapproving of, or even hostile to,
> counsel, the parties, or their cases, ordinarily do not
> support a bias or partiality challenge. They may do so
> if they reveal an opinion that derives from an
> extrajudicial source; and they will do so if they
> reveal such a high degree of favoritism or antagonism
> as to make fair judgment impossible.

Liteky, ___ U.S. at ___, 114 S. Ct. at 1157. We conclude that the passages referred to by the OIC, standing alone, would not cause a reasonable person to doubt Judge Woods's impartiality.

-23-

to dismiss the indictment, judicial resources have not been expended on the case and neither judicial, prosecutorial, nor defense efforts will have to be duplicated when the case is reassigned. The OIC's request for reassignment is granted, not because we believe Judge Woods would not handle the case in a fair and impartial manner (we have every confidence that he would), but only because we believe this step is necessary in order to preserve the appearance as well as the reality of impartial justice.

IV.

We have taken with the case Marks's motion to strike portions of appellant's brief and appendix, which according to Marks contain "Offending Materials."

We first reject, without lengthy comment, the contention that any part of the appellant's brief raised frivolous arguments or that the brief "reflects a considered decision by the Independent Counsel to attack Judge Woods personally rather than to address the correctness of the trial court's decision on its legal merits." Motion to Strike and Brief in Support Thereof at 12-13. As we have concluded in this opinion, not only are the Independent Counsel's arguments not frivolous, they are meritorious, and the bulk of his brief is indeed devoted to "address[ing] the correctness of the trial court's decision on its legal merits." In any case, Marks need not be concerned that we so easily could be distracted from our duty to review the merits of an appeal that is properly before us. Throughout his motion, Marks mischaracterizes Independent Counsel's advocacy, and comes perilously close to having filed a frivolous motion.

As for the materials that Marks claims have no business being cited in appellant's brief or being included in appellant's appendix, we conclude that they are either documents properly in the record in this case; legal authority properly cited to the

-24-

Court; or publicly filed or disseminated documents or articles of which we properly may take judicial notice.  Here, too, Marks's argument is devoid of merit.

The motion is denied.

V.

The judgment of the District Court dismissing the indictment for lack of prosecutorial jurisdiction is reversed and the case is remanded for trial.  The Independent Counsel's motion for reassignment of the case is granted, and the Chief Judge of the United States District Court for the Eastern District of Arkansas is instructed to see that the case is assigned to a judge other than Judge Woods.  Marks's motion to strike portions of the Independent Counsel's brief and appendix is denied.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.