Jose RENTERIA, Personal Representative of the Estate of Francisco Renteria, Deceased, Plaintiff,

v.

Stephen SCHELLPEPER, Luke Wilke, Danny Wright, and The City of Lincoln, Nebraska, Defendants.

No. 4:CV95–3276.

United States District Court, D. Nebraska.

Aug. 27, 1996.

Dorothy A. Walker, Lincoln, NE, for Plaintiff.

Mark A. Christensen, Andrew D. Strotman, Lincoln, NE, for Individual Defendants.

William F. Austin, Lincoln, NE, for the City of Lincoln.

## MEMORANDUM AND ORDER

KOPF, District Judge.

In this section 1983 case the Plaintiff claims that Plaintiff's decedent died while in the custody of Lincoln, Nebraska police and fire department employees when certain of those employees restrained the decedent. (Filing 1.) It is claimed that decedent died after one or more police officers applied a "lateral vascular restraint" to decedent and then "hog tied" him.

The Plaintiff has filed a statement of appeal (filing 74, objection 2) and a motion (filing 55) which both seek the disqualification of Magistrate Judge Kathleen A. Jaudzemis pursuant to 28 U.S.C. § 455. The matter was orally raised before Judge Jaudzemis during a telephone conference regarding various pending non-dispositive motions. The judge denied the oral motion but told Plaintiff's counsel to file a written motion if she desired further consideration of the matter. The lawyer did so (filing 55) and attached an affidavit in support. (Filing 57.) In addition, counsel appealed (filing 74) from the judge's denial of the non-dispositive motions alleging as a grounds for reversal the failure of the judge to remove herself from this case.

With the agreement of Judge Jaudzemis, I shall rule on the motion as well as the related appeal which also presents the disqualification issue. After careful de novo consideration, I deny the appeal, to the extent it is related to the disqualification issue [1], and the motion. Briefly, my reasons for this decision are set forth below.

### I.

Essentially, Plaintiff seeks to disqualify Judge Jaudzemis for four reasons: (1) before she came to the bench she was a lawyer and in that capacity she practiced law with the law firm that is now representing the individual defendants; (2) before she came to the bench she was a lawyer and in that capacity she defended police officers in civil rights cases and in particular she represented police officers from the City of Lincoln, Nebraska and the City of Lincoln; (3) before she came to the bench she was "consulted" as a lawyer about a case where a restraint, similar to the restraint used on decedent, was employed by unnamed Lincoln, Nebraska police officers on another man and the

---

1. I shall rule on the remaining portions of the appeal at a later time.

police department policies regarding that restraint technique have not changed; and (4) the judge is married to a deputy county prosecutor in Lincoln, Nebraska who deals with city police officers. (Filing 57.) For purposes of the motion and appeal I assume these assertions to be true. However, I also believe that other facts derived from the records of this court are necessary to put the matter in a fair perspective.

The complaint filed by the Plaintiff alleges that Plaintiff's decedent died on October 1, 1994. (Filing 1 ¶ 1.) Judge Jaudzemis was appointed to her current position and took office on January 2, 1992. Consequently, any affiliation with counsel for the individual defendants in this case, any representation of police officers or the city generally, and any specific factual knowledge regarding the practices of the Lincoln police department ended on January 2, 1992. Thus, the events which give rise to this case took place long after (2 years and 9 months) the judge had ended any previous relationship with her law firm and her former clients.

Moreover, as Judge Jaudzemis informed counsel for the Plaintiff, she recused herself from dealing with *any* cases involving her prior law firm for "twelve calendar months [after she took the bench]." (Filing 59 at 8.) But as a practical matter the "distance" between the judge and her former law firm has been much greater.

The judge, who normally deals with the Omaha, Nebraska docket because her duty station is in Omaha[2], has not had many occasions since taking the bench to deal with Lincoln, Nebraska cases generally or her former law firm[3] specifically. In fact, she was not assigned to deal with this case until March 11, 1996 when Chief Judge Cambridge assigned this case and a few other Lincoln cases to her. Judge Cambridge made this assignment after the magistrate judge residing in Lincoln, Nebraska recused himself in cases involving the city because his wife was a party to a contested matter pending before

the city council. (Filing 32). In this regard, it should be noted that it was not possible to assign this case to Magistrate Judge Thalken, the third of three magistrate judges in this district, because Judge Thalken, whose duty station is also Omaha, was endeavoring (albeit unsuccessfully) to mediate a settlement of this case at the request of the parties. (Filings 25 and 36.) Consequently, as a practical matter Judge Jaudzemis has been far removed from Lincoln, Nebraska cases generally and her former law firm particularly since she took the bench more than 4 years ago.

With regard to the "consultation" the judge is alleged to have had regarding the administration of a similar restraint technique by unnamed Lincoln police officers on another man, aside from the name of the man, there is no showing whatever regarding the specifics of that consultation or of that case ("who, what, when, where and why"). In fact, Plaintiff's counsel makes no claim that the judge or her firm were retained in that case, but instead admits that another lawyer, unrelated to the judge or her firm, defended the case. Other than the claimed similarity of technique, there is no showing that the prior case and this case are in any way factually or legally analogous.

Also, as Judge Jaudzemis further informed counsel for the Plaintiff, the Lancaster County Attorney's office, where her husband is employed as criminal prosecutor, disqualified itself from the investigation of the death of Plaintiff's decedent. (Filing 55 at 9.) As the judge observed, a special prosecutor was appointed to pursue the matter. (*Id.*) Hence there is no reason to believe that the judge's husband has had any prior dealings with this case or the investigation into the death of Plaintiff's decedent.

Finally, despite the fact that the pretrial management of this case was referred to Judge Jaudzemis on March 11, 1996, no motions for disqualification were made until late July of 1996. Plaintiff's original counsel

---

**2.** Indeed upon her appointment to the bench and her assignment to the Omaha duty station the judge moved from the City of Lincoln and Lancaster County, Nebraska and now resides in rural Saunders County, Nebraska.

**3.** Her prior law firm's main office is in Lincoln, Nebraska although it has a satellite office in Omaha, Nebraska.

withdrew on April 16, 1996 (filing 43), and new counsel was retained on June 29, 1996. (Filing 45 ¶ 4.) On April 16, 1996 I gave the Plaintiff 90 days to retain new counsel and I also extended by 90 days the time to submit a response to a pending motion for summary judgment on qualified immunity. (Filing 43.) Thus the time to respond to the pending motion for summary judgment ended on July 16, 1996. Instead of responding to the motion for summary judgment on qualified immunity, counsel filed a motion to modify the progression order on July 10, 1996. (Filing 45.) Counsel asserted the disqualification issue for the first time during a telephone hearing on July 29, 1996 when counsel was heard by Judge Jaudzemis on the request for additional time. (Filing 59 at 6–8.) As a result, there is an inference that the disqualification claim is asserted now in an effort to gain additional time rather than because of the substantive merit of the argument.

## II.

### A. Section 455(a)

 U.S.C. § 455(a), which apparently forms the main thrust of the disqualification argument asserted here [4], requires disqualification when a judge's "impartiality might reasonably be questioned." *United States v. Tucker*, 78 F.3d 1313, 1324 (8th Cir.) *pet. for cert. filed* 65 U.S.L.W. 3002 (June 26, 1996) (trial judge would be disqualified because the judge had personal relationship with President of the United States and his wife and the judge was presiding over a criminal case brought by the Independent Counsel against friend and political ally of President) (citing *Dyas v. Lockhart*, 705 F.2d 993, 997–98 (8th Cir.) *cert. denied* 464 U.S. 982, 104 S.Ct. 424, 78 L.Ed.2d 359 (1983).) This means "disqualification is required if a reasonable person who knew the circumstances would question the judge's impartiality, even though no actual bias or prejudice has been shown." *Tucker*, 78 F.3d at 1324 (quoting *Gray v. University of Arkansas*, 883 F.2d 1394, 1398 (8th Cir.1989).) An "objective standard of reasonableness" is to be employed when an-

swering this question. *Tucker*, 78 F.3d. at 1324 (quoting *United States v. Poludniak*, 657 F.2d 948, 954 (8th Cir.1981) *cert. denied*, 455 U.S. 940, 102 S.Ct. 1431, 71 L.Ed.2d 650 (1982).)

Objectively tested, I do not believe "a reasonable person who knew the circumstances would question the judge's impartiality" in this case. I come to this finding and conclusion for a variety of reasons including but not limited to the following.

### Similar litigation

 First, the fact that the judge or her prior law firm was involved in similar litigation before she came to the bench is not enough to cause a reasonable person to doubt the judge's impartiality. *See e.g., United States v. State of Alabama*, 828 F.2d 1532, 1543 (11th Cir.1987) *cert. denied* 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 894 (1988) (prior experience of trial judge in representing black plaintiffs in race discrimination suits was no basis for disqualification in school desegregation case because "[a]ll judges come to the bench with a background of experiences, associations and viewpoints."); *Patterson v. Masem*, 774 F.2d 251, 254 n. 2 (8th Cir.1985) (trial judge was not disqualified when his prior law firm participated in similar civil rights case in which certain parties to *Patterson* case unsuccessfully sought consolidation; the similar case was not the "matter in controversy" before the judge, and nothing had been brought to "our attention that would cause a reasonable person to question [the judge's] ability to impartially decide Patterson's case.")

### Same or similar parties

 Second, the judge's prior involvement as a lawyer with an interested party in a different case would not cause a reasonable person to question the judge's impartiality given the absence of a showing that the earlier case is "sufficiently related" to the "issues in dispute" before the judge in the pending case, particularly where the pending case arose long after she took the bench. *In*

---

4. As I understand the motion there is no claim of actual personal bias or prejudice under 28 U.S.C. §§ 144 and 455(b)(1)(cl.)(1). In any event, the

affidavit filed with the motion certainly fails to show any such personal bias or prejudice.

*Re Apex Oil Co.,* 981 F.2d 302, 303–04 (8th Cir.1992) (because the "issues in dispute" were not "sufficiently related," a United States Circuit Judge was not under sections 455(a) and (b) disqualified from hearing a case involving bankruptcy of Apex, which dealt with claims asserted against Apex by contract holder, even though the judge's firm, while he was a member of the firm and mentioned in a video as a part of the litigation team, had previously sued Apex for other bankruptcy claimants regarding different claims and his firm had represented other claimants on different claims in the same bankruptcy) (citations omitted); *United States v. DeLuna,* 763 F.2d 897, 907–08 (8th Cir.) *cert. denied* 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985) (disqualification "is appropriate only if the facts provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality" and fact that magistrate judge had issued a search warrant regarding a defendant's residence when magistrate judge had earlier investigated or prosecuted the same defendants in another case while the judge was a prosecutor was not sufficient to cause a reasonable person to question the judge's impartiality when events which gave rise to the search warrant arose after the judge took his judicial office). *See also United States v. Lovaglia,* 954 F.2d 811, 814–17 (2nd Cir.1992) (sentencing judge's prior representation of family that owned the victim corporation and judge's involvement in incorporating victim corporation years prior to the event in question would not cause a reasonable person to question the judge's impartiality); *National Auto Brokers v. Gen. Motors Corp.,* 572 F.2d 953, 958–59 & n. 9 (2nd Cir.1978) *cert. denied* 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979) (trial judge was not required to disqualify himself from hearing antitrust claims against General Motors where both judge and his prior law firm had previously represented General Motors when there was no showing that the prior matters and the matter before the judge were related.)

### Prior law firm

■ Third, the fact that the judge's prior law firm first appeared before her in this case more than 4 years after she left the firm to become a judge is no reason to doubt her impartiality particularly given the fact that this case arose nearly three years after she became a judge; the judge refused to handle any cases involving her former firm for a period of one year after she came to the bench; and there is no claim that she has any continuing financial interest in the law firm. *See e.g., Alvarado Morales v. Digital Equipment Corp,* 699 F.Supp. 16, 18 (D.P.R. 1988) (holding that "[t]he mere fact that a judge has been in the past a law partner to counsel for defendant is by itself insufficient to warrant disqualification" and approving the "policy of the judges in this district to abstain from any case involving their former law firms for a period of two years after coming to the Bench."); *Bumpus v. Uniroyal Tire Co. Division of Uniroyal, Inc.,* 385 F.Supp. 711, 712 (E.D.1974) (holding that fact judge was a former law partner of counsel for plaintiffs was insufficient to require disqualification, and approving the policy of the Eastern District of Pennsylvania which required judges to abstain from handling cases involving their former law firm for a period of two years after coming to the court.) *See also Formal Advisory Opinion No 62 of the Advisory Committee on Judicial Activities of the Committee on Codes of Conduct of the Judicial Conference of the United States,* Section I(B) (1979) (reprinted in Vol. II *Guide to Judiciary Policies and Procedures,* Chap. IV at IV–159 (Reissue 1993)) ("The Committee has concluded that no specific number of months should elapse before the judge begins to handle matters in which his former firm represents a party. The individual judge's feeling as to his disqualification is important and is emphasized.")

### Judge's husband is a prosecutor

■ Fourth, given that her husband played no role in this civil case or the related criminal investigation and given the fact of the appointment of a special prosecutor to inquire into the death of Plaintiff's decedent, a reasonable person would not question the judge's impartiality because her husband is a county prosecutor who deals with city police

officers in other contexts. *See e.g., Matter of Billedeaux,* 972 F.2d 104, 105–06 (5th Cir. 1992) (fact that judge's husband was a partner in a law firm that regularly represented defendant in other cases would not cause a reasonable person to question judge's impartiality in case where defendant was represented by another law firm.) *See also In re Kansas Public Employees Retirement System,* 85 F.3d. 1353, 1364 (8th Cir.1996) (judge's daughter's employment as an associate with law firm involved in a case before the judge did not require disqualification where daughter would not be involved in litigation.)

## B. Section 455(b)

■ Plaintiff, recasting his section 455(a) arguments, also asserts that certain portions of section 455(b) apply. If one of the provisions of section 455(b) applies then disqualification is mandatory whether or not a reasonable person would question the judge's impartiality. *Liljeberg v. Health Serv. Acquisition Corp.,* 486 U.S. 847, 859 n. 8, 108 S.Ct. 2194, 2202 n. 8, 100 L.Ed.2d 855 (1988). I find and conclude that none of the specifically enumerated grounds requiring disqualification under section 455(b) exist in this case. I turn next to the three portions of section 455(b) raised by Plaintiff.

### "Disputed evidentiary facts concerning the proceeding"

■ Plaintiff's counsel argues that section 455(b)(1)(cl.)(2) applies because the judge has "personal knowledge of disputed evidentiary facts concerning the proceeding." Counsel states in her affidavit that "upon information and belief" when Judge Jaudzemis was in the private practice she "was consulted about a case involving one Rick Garza, who had been arrested by the Lincoln Police Department, restrained by the use of the lateral vascular neck restraint and the use of hog tying, similar to the manner of restraint used in the instant case." (Filing 57 ¶ 3.) Plaintiff's counsel admits, however, that the Garza case was defended by another lawyer who was not in practice with the judge or her prior law firm. (*Id.* ¶ 4.)

The affidavit gives no further details regarding Judge Jaudzemis's "consultation" in the Garza case. Nor does the affidavit give any details about the Garza case itself such that it can profitably be compared to this case. While counsel does suggest that both this case and the Garza case involved similar restraint techniques, without substantially more context the alleged similarity in restraint techniques between the two cases is meaningless for purposes of applying section 455(b)(1).

For example, Plaintiff fails to show what "disputed facts" in this case are similar to the "disputed facts" in Garza about which the judge was allegedly consulted. While Plaintiff suggests that the police department policies which existed at the time of the Garza case are the same policies that existed at the time of this case, Plaintiff makes no claim that those policies are disputed or that the Garza case and this case involved the application of those policies to a similar disputed fact pattern. Simply stated, a lawyer's knowledge of the use of a restraint technique in a case derived from a "consultation" (not representation) hardly suggests that the lawyer-turned-judge knows anything relevant and disputed about the use of that technique in another case which arose nearly three years after the judge took the bench. If we know anything, we know that lawsuits are almost never fungible.

In short, there has been no showing that the judge has any extra-judicial knowledge of *"disputed evidentiary facts* concerning *the proceeding."*

### Lawyer "in the matter in controversy"

■ Pursuant to section 455(b)(2) Plaintiff argues that because the judge and her prior law firm represented police officers from the City of Lincoln when she was a member of the firm and because that same firm represents Lincoln police officers in this case the judge should be disqualified because either she served as "lawyer in the matter in controversy" or "a lawyer with whom [s]he previously practiced law served during such association as a lawyer concerning the matter."

Plaintiff reads "matter in controversy" far too broadly. The "matter in controversy" means this case or one so nearly identical

that the two are the same insofar as the parties and the claims are concerned. *In re Apex Oil,* 981 F.2d at 304. This case did not arise until long after the judge left private practice. As noted earlier, there has been no showing that the Garza case in which the judge is said to have been consulted is in any way related to this case beyond the fact that a similar restraint technique was employed by Lincoln police officers. Thus neither the judge nor her former partners could have had any association with "the matter in controversy" during the time she was a partner in the law firm. Hence, section 455(b)(2) is simply not applicable. *Id.; Patterson v. Masem,* 774 F.2d at 254 n. 2.

### Spouse with "interest in ... controversy ... that could be substantially affected"

 Referring to section 455(b)(4) Plaintiff asserts that the judge's husband has an "interest in the subject matter in controversy ... that could be substantially affected by the outcome of the proceeding." Plaintiff's factual predicate for this argument is that since the judge's husband is a criminal prosecutor the outcome of this case, involving as it will police officers, threatens the judge's husband's "ability to rely upon said officers to fulfill his duties ... ." The logic of this claim utterly escapes me.

There is no reason to think that the resolution of this civil case will have any "affect" upon the judge's husband let alone a "substantial affect." Assuming the officers are found liable and assuming the officers lose their jobs as a result, there is certainly no evidence (or claim) that the Lancaster County Attorney's office would lack a sufficient number of police officers, sheriff's deputies, state troopers, and other law enforcement agents to prosecute criminal cases.

### III.

None of the reasons asserted by Plaintiff considered separately or collectively provide a reason for me to disqualify Judge Jaudzemis under the provisions of 28 U.S.C. § 455(a) or (b). However, I note that the written motion and affidavit were filed after Plaintiff first asserted the disqualification issue orally before Judge Jaudzemis. Thereafter, an appeal was taken from her ruling on the request for extension of time which appeal asserted the disqualification claim as a reason for reversal. In order to consider the motion and the appeal expeditiously Judge Jaudzemis agreed that I should consider both the motion and the appeal to the extent those matters raised the issue of disqualification. As a consequence, Judge Jaudzemis has not had a full opportunity to consider the assertions made in the written affidavit filed in support of the motion.

Accordingly, I shall request Judge Jaudzemis to separately consider the allegations contained in the motion and affidavit and then come to an independent decision about whether she should recuse herself in this case. In the interim, and until and unless she decides to recuse herself, I request that Judge Jaudzemis continue to handle the pretrial management of this case.

As a result,

IT IS ORDERED that:

1. The motion (filing 55) and the appeal (filing 74, objection 2) limited to the issue of disqualification are denied;

2. Judge Jaudzemis is requested to separately consider the motion (filing 55) and supporting affidavit (filing 57) to independently determine whether she should recuse herself and unless and until the judge decides to recuse herself she is requested to continue the pretrial management of this case.